THE STATE OF OHIO, APPELLEE, *v.* BLACKWELL, APPELLANT.

(No. 83AP-738—Decided
April 19, 1984.)

*Mr. Michael Miller,* prosecuting attorney, and *Ms. Karen L. Martin,* for appellee.

*Mr. Myron Schwartz,* for appellant.

BROGAN, J. Appellant, Charles Blackwell, appeals from his conviction in the Franklin County Court of Common Pleas for two counts of kidnapping with firearm specifications, three counts of aggravated robbery with firearm specifications, one count of robbery, and one count of abduction. Appellant was sentenced to five consecutive terms of four to twenty-five years on the first degree felonies, four to fifteen years on the robbery conviction, and an additional three-year actual incarceration sentence was imposed for a specification for use of a firearm in the commission of the aggravated robbery.

Appellant has raised four assignments of error for resolution by this court. The first assignment of error is that the trial court erred by giving further instructions to the jury as to law without the presence of the appellant.

Appellant maintains that he was not brought into the courtroom on the morning of July 22, 1983 when the court gave additional instructions to the jury. The record in this case fails to demonstrate whether the appellant or his counsel was present during the proceedings when additional instructions were given to the jury. The additional instructions requested by the jury were to repeat the elements of the offenses charged and the lesser included offense of abduction. The jury also requested that the instruction on aiding and abetting be reread by the court. The court complied with the jury's request.

While it is prudent for the trial court to note the presence of all parties whenever the court is in session, it is not unusual for the court to neglect to do so. In *State* v. *Grisafulli* (1939), 135 Ohio St. 87 [13 O.O. 440], the Supreme Court found prejudicial error where the trial court gave instructions during the absence of the accused. However, in *Grisafulli,* the record affirmatively revealed defendant's absence. This record does not.

In *State* v. *Abrams* (1974), 39 Ohio St. 2d 53 [68 O.O.2d 30], it was held that a trial court's communication with the jury during the deliberation stage may be harmless error. This court held in *State* v. *Johnson* (July 16, 1981), No. 81AP-56, unreported, the fact that the trial court instructed the jury on the law relating to eyewitness identification in the defendant's absence was not prejudicial.

Our examination of the record suggests that counsel was present during the giving of the additional instructions. If counsel felt that the trial court had misstated any of the instructions, he had a duty to object. Our examination of those instructions given fails to disclose any error in their delivery. We must conclude that, assuming the accused was absent during the giving of the additional instructions, such error by the trial court was harmless. The first assignment of error is overruled.

In his second assignment of error, appellant contends that the trial court

erred by instructing the jury that he could be convicted of an R.C. 2929.71 specification of having a gun on his person or under his control while committing the felony as an aider and abettor.

On January 5, 1983, the Ohio Legislature adopted legislation mandating a three-year term of "actual incarceration" to be served consecutively to an indefinite term of imprisonment under R.C. 2929.11. R.C. 2929.71 read in pertinent part, as follows:

"(A) The court shall impose a term of actual incarceration of three years in addition to imposing a life sentence for aggravated murder or an indefinite term of imprisonment pursuant to section 2929.02 or 2929.11 of the Revised Code, if both of the following apply:

"(1) The offender is convicted of, or pleads guilty to, any felony other than a violation of section 2923.12 of the Revised Code or a felony for which a term of actual incarceration can be imposed pursuant to division (B) of this section;

"(2) The offender is also convicted of, or pleads guilty to, a specification charging him with having a firearm on or about his person or under his control while committing the felony. The additional term of actual incarceration shall be served consecutively with, and prior to, the life sentence or the indefinite term of imprisonment. If an offender is convicted of, or pleads guilty to, two or more felonies for which a term of actual incarceration must be imposed under this division and of a separate specification for each felony charging him with having a firearm on or about his person or under his control while committing the felony, all of the terms of actual incarceration for all of the felonies shall be served consecutively and prior to any of the life sentences or indefinite terms of imprisonment imposed for the felonies.

"(B) The court shall impose a term of actual incarceration of three years in addition to imposing an indefinite term of imprisonment pursuant to section 2929.11 of the Revised Code *if the offender is convicted of, or pleads guilty to, a violation of* division (A)(2) of section 2903.11 or 2903.12, *division (A)(1) of section 2911.01,* division (A)(2) of section 2911.11, or division (A)(3) of section 2917.02 of the Revised Code *for which violation the use of a firearm, or the offender's having a firearm on or about his person or under his control, is an element of the offense.* The additional term of actual incarceration shall be served consecutively with, and prior to, the indefinite term of imprisonment. If an offender is convicted of, or pleads guilty to, two or more violations for which a term of actual incarceration must be imposed under this division, all of the terms of actual incarceration for all of the violations shall be served consecutively and prior to any of the indefinite terms of imprisonment imposed for the violations." (Emphasis added.)

Appellant was convicted of a violation of R.C. 2911.01(A)(1), which reads:

"(A) No person, in attempting or committing a theft offense as defined in section 2913.01 of the Revised Code, or in fleeing immediately after such attempt or offense, shall do either of the following:

"(1) Have a deadly weapon or dangerous ordnance as defined in section 2923.11 of the Revised Code on or about his person or under his control;"

R.C. 2929.71(B) is unambiguous. Since the statute admits of no exceptions to those convicted of R.C. 2911.01 (A)(1) as "aiders and abettors," and appellant was convicted of a violation of R.C. 2911.01(A)(1), the trial court had a mandatory duty to impose the additional term of actual incarceration. The second assignment of error is accordingly overruled.

In his third assignment of error, appellant contends that the trial court erred by not suppressing the identification testimony made by a witness who could not make an in-court identification

when police failed to keep the original photo array and the trial court failed to give special identification instructions.

The evidence revealed that a short time after the robbery on March 17, 1983 at Milo's Beauty Supply Company, appellant gained entry into the apartment of Arthur Wheeler under the subterfuge that he wished a drink of water. At that time, the Columbus police were combing the area of Wheeler's apartment in search of the appellant for the robbery of Milo's. Wheeler, an eighty-seven-year-old man, stated that appellant was in his apartment for some twenty-five to thirty minutes. He stated that the appellant tied him up and cut the wires to his telephone. He also stated that appellant took one of his hats. He gave a general description of the suspect to the police and stated that the suspect wore several gold chains around his neck. Wheeler stated that he had a good opportunity to observe the suspect while he was in the apartment.

Officers James Longerbone and Michael Kovach of the Columbus Police Department stated that they interviewed Wheeler on March 18, 1983 concerning the incident in his apartment; that they showed Wheeler six photographs of black males depicting a side and frontal view of the individuals; that the photographs were of black males of the same age, facial hair, and complexion as the suspect; and that Wheeler identified the appellant as his assailant. At the time of the motion hearing, the police had lost four of the photographs and, thus, they were unavailable for examination by the court. Wheeler's son-in-law, Harley Master, corroborated at trial the testimony of the police officers at the motion hearing — that his father-in-law was shown multiple photographs; that the police showed Wheeler four to six photographs; and that the photographs appeared to be similar to one another.

At the hearing on the motion to suppress, Wheeler stated that the police showed him two photographs, and that he identified one of the photographs as being identical to the suspect except that the suspect's hair was shorter. On cross-examination, he could not make an in-court identification of the appellant. At trial, Wheeler was not asked to make an in-court identification of appellant, but he recounted for the jury the identification of the photograph of the appellant given him by the police.

The record reveals that latent fingerprints were taken from the phone receiver in Wheeler's apartment and they matched appellant's known fingerprints. Also, when appellant was arrested, he was wearing gold chains around his neck similar to those described by Wheeler. Appellant also admitted the robbery of Milo's and the incident involving Wheeler. While Wheeler could not make an in-court identification on July 18, 1983, he did identify appellant's photograph the day after the robbery and abduction of Wheeler.

Before identification testimony is suppressed, the trial court must find that the procedure employed was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification. *Neil* v. *Biggers* (1972), 409 U.S. 188. Reliability is the linchpin in determining the admissibility of identification testimony, and even if the identification procedure itself was suggestive, so long as the challenged identification itself is reliable, it is admissible. *Manson* v. *Brathwaite* (1977), 432 U.S. 98.

The evidence at trial clearly demonstrated the reliability of Wheeler's identification. The trial court quite properly did not err in permitting the identification of appellant's photograph to be admitted at trial. The third assignment of error is without merit.

In his fourth assignment of error, appellant contends that the trial court erred in admitting a confession obtained

during plea negotiations by appellant and the police since appellant refused to sign a rights' waiver under the premise that his statements were being used only for finalizing the negotiations.

The record of the motion to suppress hearing reveals that appellant was arrested on March 19, 1983. Prior to questioning by Detective Longerbone, appellant was given his *Miranda* warnings. Appellant indicated that he did not wish to talk to Longerbone until he had the opportunity to talk to Detective Michael Elkins of the homicide squad of the Columbus Police Department. Longerbone testified that appellant agreed to cooperate in an unrelated homicide investigation in exchange for being permitted to plead to "one Fl for the aggravated robbery." Detective Kovach testified that it was agreed that appellant would be allowed to plead to one count of aggravated robbery, if the prosecutors went along with it, if the judge agreed, and if the appellant testified against the individual at the homicide trial. Kovach stated that appellant then made a statement to them about the Milo's robbery and the Wheeler kidnapping.

On cross-examination by the prosecution, Kovach stated that he made no promises concerning penitentiary time to be served; that he only mentioned the "Fl with specs"; and that the negotiations with the appellant never required that he make a statement concerning the crimes for which he was arrested. Detective Elkins testified that the plea discussions were tied to appellant's cooperation in the pending unrelated homicide investigation and that the discussions never entailed a requirement that appellant give a statement concerning the robbery which was under investigation.

Assistant prosecutor Daniel Hogan testified that he participated in plea discussions with defense counsel after appellant was indicted on multiple charges relating to the Milo's robbery and the Wheeler kidnapping. He further stated that the officers recommended his office accept appellant's plea to one count of aggravated robbery with a firearm specification in exchange for his assistance in the pending homicide investigation.

Appellant testified that he was given *Miranda* warnings prior to his interview by the police and that he made the statement with full knowledge of his constitutional rights. Appellant acknowledged that he had not been threatened in any way in order to obtain his statement. He also did not state that he had made the statement to the police because of the promise he would be permitted to plead to a lesser offense than those charged.

The trial court, as trier of the facts at the suppression hearing, chose to believe the testimony of officers Longerbone and Kovach and not that of appellant. The state complied with its promise to the appellant. The fact that appellant chose to decline the benefits of the negotiations does not render his statement involuntary. There was no evidence that the "statement" was obtained from the appellant because of promises of leniency.

In *Hutto* v. *Ross* (1976), 429 U.S. 28, the Supreme Court held that not every statement made as a result of a plea bargain is inadmissible in a criminal trial. Even if appellant's statement would not have been made but for the plea bargain, causation in that sense is not the test of voluntariness. Rather, the test is whether the confession was extracted by threats, violence, or improper influence, or was obtained by any direct or implied promises. Since the appellant knew that he need not give a statement in order to enforce the plea bargain, the confession was not the result of promises or coercion and was admissible. See, also, *State* v. *Edwards* (1976), 49 Ohio St. 2d 31 [3 O.O.3d 18], wherein the

Supreme Court of Ohio adopted the "totality of circumstances" rule, and held that the presence of promises does not, as a matter of law, render a confession involuntary.

Accordingly, we find the fourth assignment of error to be without merit. The judgment of the trial court is affirmed.

*Judgment affirmed.*

McCORMAC, P.J., and NORRIS, J., concur.

BROGAN, J., of the Second Appellate District, sitting by assignment in the Tenth Appellate District.