The STATE of Ohio, Appellee,

v.

ROWE, Appellant.

[Cite as *State v. Rowe* (1993), 92 Ohio App.3d 652.]

Court of Appeals of Ohio,
Franklin County.

No. 92AP–1763.

Decided Oct. 26, 1993.

654

*Michael Miller,* Prosecuting Attorney, and *Steven L. Taylor,* Assistant Prosecuting Attorney, for appellee.

*Judith M. Stevenson,* Franklin County Public Defender, and *John W. Keeling,* Assistant Public Defender, for appellant.

BOWMAN, Judge.

Appellant, Deborah L. Rowe, was convicted of murder in connection with the July 5, 1991 stabbing death of Frank Price, and was sentenced to fifteen years to life imprisonment.

Evidence presented at trial showed that Price lived in an apartment on the tenth floor of the Taylor Towers, a high-rise housing project in Columbus. Louise C. Thompson, Price's eighty-three-year-old neighbor, told police that, on the evening of the murder, she left her apartment to go downstairs and saw Price attempting to exit his apartment. Thompson heard a woman inside Price's apartment ask him where he was going, but Thompson did not hear Price's response. The woman then shouted, "no, you're not[,]" and yanked Price back inside the apartment, causing Price to hit the floor. Thompson then walked by the apartment, where Price was now lying in the doorway, and told the woman, whom she later identified as appellant, to call the emergency squad, as Price appeared unconscious. According to Thompson, appellant did not seem concerned and was instead searching the apartment for something. Thompson went

downstairs to the lobby of the building. While Thompson was calling for assistance, she saw appellant leave the building and turn east on First Avenue.

Upon their arrival at the scene, police and paramedics found Price already dead of a stab wound to the heart, and found a blood-stained knife in Price's bathtub. Also in the apartment was a wallet containing identification belonging to appellant. Based upon information provided by Thompson, appellant was arrested and charged with Price's murder.

Appellant now assigns the following as error:

"Assignment of Error Number One

"The trial court erred when it admitted, over defendant's objections, a deposition of an essential witness for the state when the state failed to establish, by detailed sworn testimony, that the witness was unavailable thereby violating the Rules of Evidence and the Confrontation Clause provisions of the state and federal Constitutions.

"Assignment of Error Number Two

"The state engaged in acts that deprived the defendant of her right to a fair trial and due process of law when it used evidence to establish the defendant's guilt without disclosing to the jury, or the defendant, additional facts of the exculpatory nature of the evidence and by failing to disclose evidence of prior inconsistent statements made by a witness for the state.

"Assignment of Error Number Three

"The defendant's constitutional rights were violated when the state called a detective in its case-in-chief for the purpose of establishing that the defendant refused to waive her 'Miranda' rights and requested to talk to an attorney.

"Assignment of Error Number Four

"The trial court erred when it answered a question of the jury, outside the presence or knowledge of the defendant, and refused the jury's request to review a transcript of crucial eyewitness testimony and further erred when it instructed the jury that they had to rely upon their collective memory.

"Assignment of Error Number Five

"The trial court erred when it refused to allow the defendant to cross-examine a police officer concerning the identity of the civilian witnesses that he spoke to during his investigation.

"Assignment of Error Number Six

"The trial court erred when it allowed, over defendant's objection, jury deliberations to continue when it had reason to believe that the jury was deadlocked and that one of the jurors was sick.

"Assignment of Error Number Seven

"Evidence was improperly admitted in a manner that deprived defendant of her right to a fair trial and due process of law when a detective expressed his personal belief of defendant's guilt and improperly suggested that the defendant had a criminal background."

■ Appellant's first assignment of error charges that the trial court erred in admitting Thompson's deposition because the state failed to establish Thompson's unavailability and the deposition was taken while appellant was incompetent and unable to assist in her own defense.

Several hearings were held prior to trial on the issue of appellant's competence, and Thompson's availability to testify at trial. The state requested to depose Thompson, who was in her eighties with a history of heart disease and diabetes, on the grounds that Thompson was, at that time and would continue to be, unavailable to testify at trial. Appellant objected on the basis that appellant was not competent at that time and could not assist in preparing for the deposition. Appellant also charged that Thompson made regular trips to the grocery and to the ground floor of her apartment building to visit with friends, and was able to testify at trial.

On November 6, 1991, the trial court stated that, while appellant had been declared incompetent in a prior case, as of the last report she was competent. Although the court agreed to allow another competency evaluation, the court rejected counsel's assertion that appellant's mental state would prevent appellant from assisting her counsel in preparation for Thompson's deposition. The court thus granted appellant's motion for a competency evaluation, but also granted the state's request to depose Thompson. Thompson was deposed in her own apartment on November 7, 1991, with appellant and her counsel in attendance.

On April 8, 1992, the parties stipulated as to the contents of appellant's psychological evaluation and the court determined that appellant was not competent to stand trial, but would be competent within one year. At another hearing on July 15, 1992, the parties stipulated the contents of a second evaluation finding appellant competent at that time and the matter was set for trial.

On November 10, 1992, the court heard appellant's motion to exclude Thompson's deposition on the grounds that the state had failed to prove Thompson's unavailability. The court found that Thompson was unavailable for trial, and that appellant had had an opportunity and similar motive to cross-examine Thompson during the deposition. The court thus declared the deposition admissible and the matter proceeded to trial.

In her first assignment of error, appellant asserts that the state failed to present sufficient evidence establishing Thompson's unavailability so as to satisfy

the Confrontation Clause of the Sixth Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, and to overcome the prohibition against hearsay evidence contained within the Ohio Rules of Evidence.

A witness is considered unavailable where he or she is unable to be present or testify at trial due to a then-existing physical illness or infirmity. Evid.R. 804(A)(4). Although hearsay, the testimony offered by an unavailable witness is admissible if it was taken during a deposition held in the course of the same proceeding, so long as the party against whom the testimony is offered had an opportunity and similar motive to develop the testimony by direct, cross- or redirect examination. Evid.R. 804(B)(1).

The Sixth Amendment to the United States Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him[.]" In *State v. Keairns* (1984), 9 Ohio St.3d 228, 229–230, 9 OBR 569, 570–571, 460 N.E.2d 245, 247, the court described the interaction between Evid.R. 804 and the Confrontation Clause as follows:

"[The Confrontation Clause] is the embodiment of traditional preferences for testimony of a witness who can be cross-examined and who can be observed face-to-face by the trier of fact. * * * These preferences of the Confrontation Clause create certain barriers to the unfettered use of hearsay, although they do not act as an absolute bar."

In order for hearsay evidence to be admissible under one of the Evid.R. 804 exceptions, the party seeking its admission must first demonstrate that the declarant is unavailable to testify by presenting evidence that the prosecution has made reasonable efforts in good faith to secure the declarant's presence at trial. *Id.* at 230, 9 OBR at 571, 460 N.E.2d at 247–248. The declarant's statement must also bear sufficient indicia of reliability, that is, "hearsay marked with such trustworthiness that 'there is no material departure from the reason of the general rule'" that out-of-court statements offered for their truth are inadmissible. *Ohio v. Roberts* (1980), 448 U.S. 56, 65, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597, 607.

*Keairns* addressed an allegation that the state had not made an adequate showing of unavailability because it failed to use reasonable efforts made in good faith to secure the declarant's presence at trial. *Id.*, 9 Ohio St.3d at 231, 9 OBR at 571–572, 460 N.E.2d at 248–249. The court held that:

"A showing of unavailability under Evid.R. 804 must be based on testimony of witnesses rather than hearsay not under oath unless unavailability is conceded by the party against whom the statement is being offered." *Id.* at paragraph three of the syllabus.

In *Keairns,* the state's claim of unavailability was based upon Evid.R. 804(A)(5), providing that a declarant may be deemed unavailable where the proponent of his statement is unable to procure his attendance. Although in *Keairns* there was testimony that law enforcement officials had looked for the witness and that subpoenas had been issued, the court determined that, because the state had offered no sworn testimony of what if any efforts it had made to locate the declarant, the state had failed to meet its burden to demonstrate the witness was unavailable, and so the requirements of Evid.R. 804 and the Confrontation Clause were not met.

Although the case at bar deals with a different basis for the claim of unavailability, the state was nevertheless required to demonstrate that it made reasonable efforts in good faith to procure Thompson's testimony at trial. To support its claim that Thompson was unavailable, the state presented an unsworn affidavit from her doctor explaining that health problems would prevent Thompson from testifying at trial. The affidavit stated:

"I, Dr. Doris Walzak, M.D., do hereby declare that I am the physician of record for Louise Thompson, and that the following information concerning Mrs. Thompson is true and accurate.

"1. Louise Thompson is an elderly lady age 84 years, D.O.B. July 5, 1908.

"2. Mrs. Thompson is now and has been for a period of years my patient.

"3. Mrs. Thompson has a combination of illnesses associated with her heart, diabetes and advanced age.

"4. Mrs. Thompson has been hospitalized several times for her heart condition.

"5. As her physician, I can not recommend that she appear in court to testify in the above-styled case. Testifying would cause her too much stress. This was my opinion on the previous times the case was set for trial. This is still my opinion for the trial date of November 16, 1992.

"6. I did authorize the deposition taken at her apartment on November 7, 1991. Even that was excessively stressful to her.

"7. Mrs. Louise Thompson's condition will not improve due to her age. Her condition has only worsened since the beginning of this case. At no future date will she be in physical condition to testify on the witness stand in person for this trial."

The burden of proving Thompson's unavailability and, hence, the admissibility of Thompson's deposition rested upon the state, as the proponent of Thompson's testimony. See *Keairns* at 232, 9 OBR at 572–573, 460 N.E.2d at 249–250. Thus, the state was required to demonstrate that it had made a

reasonable, good faith effort to procure Thompson's testimony at trial and to prove, based upon testimony of witnesses rather than hearsay not under oath, that Thompson was unavailable. *Id.*

The evidence offered by the state in this regard was insufficient to establish Thompson's unavailability. The prosecutor admitted that it had been over one year since she had last seen or spoken with Thompson. The affidavit from Thompson's doctor was unsworn, and the doctor herself did not appear to testify as to the truth of her statements or the condition of Thompson. The contents of the affidavit did not specifically outline the physical illness or infirmity which allegedly prevented Thompson's appearance, nor did it indicate the last time Thompson was examined. The state did not assert that any attempt had been made to conduct a second deposition to determine if Thompson's condition had changed in the previous year, nor did the state rebut evidence that Thompson was still able to do her own shopping and visit with neighbors. Apparently, Thompson refused to make herself available to the defense so that the defense could ask additional questions which might have arisen since the original deposition.

█ In an attempt to shift the burden of proving Thompson's unavailability to appellant, the state suggested that appellant could have subpoenaed Thompson's doctor to appear at trial. However, appellant was under no obligation to do so. The issue is not what measures the defense took to show Thompson's availability but, rather, the sufficiency of the evidence presented by the state to show Thompson's unavailability. The state did not meet its burden and there was insufficient evidence that Thompson was unavailable.

█ The state contends that, because appellant did not object to the fact that the affidavit was unsworn, any error was waived. The state additionally asserts that no plain error proceeds from the introduction of the unsworn affidavit because the outcome of the trial would have been the same had the affidavit been sworn. This argument is not well taken. First, appellant did generally object to the failure of the state to secure the presence of Thompson's physician for purposes of cross-examination and to the failure of the state to promptly provide accurate information on how to contact the physician. Appellant also objected to the lack of specific evidence regarding Thompson's physical condition at the time of trial, and asserted that Thompson had been unwilling to speak to the defense. These objections were pertinent to the flaws in the state's attempt to show Thompson's unavailability, and the lack of a specific objection to the form of the affidavit itself did not result in a waiver.

█ In addition, even if appellant's failure to specifically object to the form of the affidavit impinged upon her ability to charge error herein, the state's claim

that the introduction of the affidavit was not plain error is not well taken. As the court stated in *Kearns* at 232–233, 9 OBR at 572–573, 460 N.E.2d at 249–251:

"Finally, [the state] maintains that if the admission of the former testimony was error, it was harmless error. The beneficiary of a federal constitutional error must prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained in order for the error to be harmless. * * * [The testimony of an unavailable witness] was used as important evidence in a close case. [The state] has not shown the error to be harmless beyond a reasonable doubt."

Similarly, in the case herein, Thompson's deposition provided the only significant evidence of appellant's guilt. Appellant's substantial right to confrontation was affected by the state's failure to demonstrate Thompson's unavailability, and the evidence apart from Thompson's deposition was not so overwhelming as to have resulted in an inevitable finding of guilt.

■ Regarding appellant's claim that she was incompetent and, therefore, unable to assist in the preparation of her defense at the time of Thompson's deposition, R.C. 2945.37 provides:

"A defendant is presumed competent to stand trial, unless it is proved by a preponderance of the evidence in a hearing under this section that because of his present mental condition he is incapable of understanding the nature and objective of the proceedings against him or of presently assisting in his defense.

" * * *

"The court shall conduct the hearing within thirty days after the issue is raised, unless the defendant has been referred for examination under section 2945.371 of the Revised Code, in which case the court shall conduct the hearing within ten days after the filing of the report required by that section. A hearing may be continued for good cause shown."

In the case at bar, the trial court referred appellant for examination at the time her counsel raised the issue of her competency. Appellant was examined and the results of her competency evaluation were stipulated into evidence on April 8, 1992, with the trial court holding a hearing that same day. There is no evidence in the record, nor does appellant argue herein, that the time requirements of R.C. 2945.37 were not observed, and there is no additional requirement that the trial court must wait for the accused to be determined to be competent before allowing a deposition to be conducted.

Therefore, appellant was presumed competent until proved otherwise and, since she was not found incompetent until some months after the deposition was

taken, her assertion of incompetence at the time of the deposition is not well taken.

We sustain appellant's first assignment of error to the extent appellant asserts that the state failed to make a sufficient showing of Thompson's unavailability.

Appellant's second assignment of error concerns the bloodstained dress appellant was wearing at the time of her arrest. As part of the investigation, the state submitted the dress to a crime lab, which determined only that the substance on the collar was human blood. Appellant charges that the trial court erred in admitting the evidence of blood on appellant's clothing because the state failed to test the blood to determine if it was appellant's or Price's. She therefore urges that the evidence was inadmissible because its prejudicial effect outweighed its probative value. See Evid.R. 403(A).

A trial court has broad discretion in the admission or exclusion of evidence, and its judgment will not be reversed absent a clear showing of an abuse of discretion with attendant material prejudice to the defendant. *State v. Hymore* (1967), 9 Ohio St.2d 122, 38 O.O.2d 298, 224 N.E.2d 126, certiorari denied *Hymore v. Ohio* (1968), 390 U.S. 1024, 88 S.Ct. 1409, 20 L.Ed.2d 281. Human bloodstain evidence may be admissible even though no particular source is named. *State v. Taylor* (Nov. 8, 1984), Franklin App. No. 84AP–323, unreported, 1984 WL 5973. In *Taylor,* the defendant alleged error in the admission of a bloodstained pillowcase found in a motel room where a child allegedly had been beaten, arguing that the state had failed to produce evidence identifying the blood as the child's. This court found the evidence was properly admitted, since other evidence presented gave rise to a reasonable inference that the bloodstains appeared during defendant's occupancy of the motel room, and determined that:

" * * * Any deficiencies in identifying scientifically more precisely the source of the blood went only to the weight of the evidence, as stated by the trial court, rather than to require the trial court to determine as a matter of law that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice." *Id.* at 6–7.

Although in *Taylor* there was no other explanation offered for the presence of the bloodstain, and here appellant claimed the blood was her own, this distinction does not affect our conclusion that, where the jury is fully apprised of the shortcomings of bloodstain evidence, any possible prejudicial effect does not, as a matter of law, outweigh the probative value of the evidence.

In the case before us, the jury heard evidence that the state could have, but did not, order DNA testing to determine whether the blood was appellant's or Price's, and that both appellant and Price had the same blood type, so that determining the blood type would not have helped. The jury also heard a

defense witness testify that, earlier on the day appellant was arrested, appellant was mugged and sustained a cut on her forehead. The jury is presumed to have given the evidence regarding the blood on appellant's clothing its proper weight, and we cannot say that the evidence was so prejudicial as to indicate an abuse of discretion by the trial court to have admitted it.

Also regarding the blood on the dress, appellant claims that the court erred in denying her request to see notes taken by Gary Rountree, a homicide detective with the Columbus Police Department, regarding the investigation. Although Rountree's notes reflected that appellant's head appeared to be cut, Rountree never mentioned it in his testimony and the state failed to make appellant aware of what appellant alleges was exculpatory evidence. Appellant claims that it was not until after trial, when the notes were available for appellate purposes, that she was aware that Rountree had seen a cut on her head and, therefore, that her constitutional rights were violated by the prosecution's failure to reveal exculpatory evidence.

"Exculpatory evidence" is defined as evidence favorable to the accused which, "if disclosed and used effectively, * * * may make the difference between conviction and acquittal." *United States v. Bagley* (1985), 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481, 490. The state is subject to an ongoing duty to disclose evidence favorable to the defense, and the failure of the prosecutor to reveal exculpatory evidence can constitute a denial of the accused's due process rights where the unrequested evidence has substantial value or, in other words, where such evidence is material. *Bagley; United States v. Agurs* (1976), 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342. Moreover, "a constitutional error occurs, and the conviction must be reversed, only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial." *Bagley,* 473 U.S. at 678, 105 S.Ct. at 3381, 87 L.Ed.2d at 491. As the Ohio Supreme Court stated in *State v. Johnston* (1988), 39 Ohio St.3d 48, 60, 529 N.E.2d 898, 910–911:

"When the prosecution withholds material, exculpatory evidence in a criminal proceeding, it violates the due process right of the defendant under the Fourteenth Amendment to a fair trial. * * *

"Thus, the key issue in a case where exculpatory evidence is alleged to have been withheld is whether the evidence is material. * * * "

Bagley set forth the test to be applied in determining whether the prosecution improperly suppressed evidence favorable to the accused, and stated that such evidence shall be deemed material only if there is:

"[A] reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable

probability' is a probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682, 105 S.Ct. at 3383, 87 L.Ed.2d at 494.

■ Thus, in addressing appellant's assertion that the state should have permitted appellant access to the evidence that Rountree had noticed the cut on appellant's head, the issue before us is not whether the informational summary sought by appellant was discoverable, nor whether Rountree's observation that appellant had a cut on her forehead was favorable to appellant, but whether the omission of such evidence produced a reasonable probability that, had the jury known that Rountree observed a cut on appellant's forehead, the jury's verdict would have been affected.

Appellant asserts that her entire defense rested upon her explanation that, at the time of the murder, she was in the bar located just below her apartment and that the blood on her dress was not the result of her having murdered Price, but the result of her having been robbed and injured on her forehead earlier that day. Appellant presented two witnesses to testify in this regard: Janice Hawkins, a barmaid at the bar, and Ella Price, an acquaintance of appellant's.

Hawkins testified that, on the day of the murder, appellant was at the bar at 5:00 p.m., that appellant did not leave until about 7:15 p.m., and that appellant was out of view for no longer than ten minutes. However, Hawkins admitted she never told the police this story, even though she was present at the bar when police went to appellant's apartment above the bar to arrest her. In addition, Hawkins could not remember what appellant wore that day, and testified that appellant was not injured when Hawkins saw her and that she saw no blood on appellant's clothing.

Appellant's other alibi witness was Ella Price (not related to the victim), who testified that she saw appellant earlier on the day of the murder, and that appellant described having been mugged:

" * * * I seen Debbie about—between 12:00 and 2:00. Okay. She was over my house. * * * So someone knocked on the wall, and her father wanted her to go to the store, so she went to the store. She came back. She had a rag or something up over her head, so I took it off her head.

"She was coming back up the steps, 'cause when they called, we was all upstairs. So I took it off her head, and I asked her what happened. So somebody had took her money and—well, she went to the store for her father. They had took that and they hit her in the head or something. And they hit her in the head, and she had a rag over her cut."

However, Ella Price did not remember what appellant was wearing and, therefore, could not testify if appellant had any blood on her clothing. In

addition, Ella Price testified that she did not see appellant after 2:00 p.m. that day.

Considering the limitations of the evidence provided by these witnesses, we cannot find there was a reasonable probability that, had the jury learned of Rountree's observation of a cut on appellant's forehead, the outcome in this case would have been different.

We reiterate that the jury was aware of the limited weight it could give the evidence of the blood on the/dress, and heard appellant's explanation for the blood. While Rountree's observation might have bolstered appellant's explanation that the blood was her own, he only noticed a cut on appellant's head. Such evidence would not have established when or how the cut was received. Finally, even if the jury believed the defense's explanation that the blood came from a cut on appellant's head, the jury might still have rejected appellant's alibi and found her guilty, since appellant could have committed the murder regardless of whether she had earlier received a cut which dripped blood on her clothing.

We distinguish the facts in this matter from those addressed by this court in *State v. Walden* (1984), 19 Ohio App.3d 141, 19 OBR 230, 483 N.E.2d 859. In Walden, there was no dispute that the defendant had killed the victim; at issue was whether she acted in self-defense. The defendant testified that, in the weeks before the murder, she had received harassing phone calls, that her property had been vandalized and burglarized, and that she had reported the telephone calls to the police. The state apparently had records indicating that, about a week before the shooting, defendant had contacted the police department about the telephone harassment. Nevertheless, throughout the trial, the prosecutor referred to the nonexistence of any telephone company records regarding the telephone harassment, although the prosecutor never expressly referred to the lack of a police report regarding the calls.

In *Walden*, this court determined that the failure of the state to provide requested discovery of such exculpatory evidence constituted prosecutorial misconduct of such magnitude as to deny the defendant her constitutional rights. In so holding, we stated:

" * * * Here, since the defendant's credibility was one of the major issues at trial, predicated in large measure upon the absence of any documentation of her alleged receipt of harassing telephone calls, the existence of the written police reports in the police files could well have had a substantial impact upon the jury's determination either of reasonable doubt or upon defendant's claim of self-defense. Accordingly, if the prosecution prior to or during trial knew of the existence of these written police reports and failed to provide them to defense counsel despite the request for production of all exculpatory evidence, the misconduct involved would amount to a denial of due process within the rule of

*Brady* and *Agurs, supra.*" *Id.,* 19 Ohio App.3d at 149, 19 OBR at 238–239, 483 N.E.2d at 868–869.

In the case at bar, by contrast, appellant's defense was that she could not have committed the murder because she was at the bar at the time Price was killed. While Rountree's observation that she had a cut on her head might have bolstered her story that she was robbed earlier that day, and so was favorable to the defense, such evidence was not material in the sense that it invoked a reasonable probability of altering the outcome of the trial. All the evidence would have shown was that appellant had a cut on her head and that, possibly, the blood on appellant's dress came from the cut. Since the jury was already cognizant of the limited importance of the blood on appellant's clothing, the failure of the state to reveal the evidence of Rountree's observation was not sufficient to impact upon appellant's constitutional rights.

Appellant's second assignment of error is overruled.

Appellant's third, fifth and seventh assignments of error all raise issue with specific aspects of Detective Rountree's testimony and will be addressed together. Appellant asserts that the trial court erred in admitting Rountree's testimony that appellant asserted her right to remain silent, in refusing to allow cross-examination of Rountree regarding witnesses contacted during his investigation, and in admitting Rountree's personal opinion regarding appellant's culpability and criminal history.

Appellant's assertion that her constitutional rights were violated when Rountree called attention to her refusal to waive her *Miranda* rights and her request to talk to an attorney is not well taken. Appellant specifically objects to the following exchange:

"[Prosecutor] Q. And then did you—is there a section that's signed at that point in time? I mean, is there a line that they need to sign?

"[Rountree] A. There is an area there for—explain to them, by signing that, it doesn't admit to anything. It just acknowledges the fact that I did read and explain her constitutional rights to her.

"Q. And did she sign that she had been given her constitutional rights?

" * * *

"A. * * * She did refuse to sign this.

" * * *

"Q. * * * After you explained that whole rights waiver to her, did you ask her any question?

"A. * * * Yes, I asked her if she knew Frank C. Price, the victim.

"Q. And what was her answer?

"Ms. Wonnell: Your honor, I'm going to object. Do you want me to approach the bench?

"The Court: No, we've already discussed it. It's overruled.

"Ms. Wonnell: Thank you, your honor.

"A. She stated that she did not know Mr. Price.

"Q. Okay. And after that point in time, did she indicate she wanted to talk to you at all?

"A. She stated that she wanted an attorney.

"Q. Okay. So at that point, did you terminate your—

"A. That was it."

Where the accused asserts his constitutional right to remain silent, his silence may not be used against him. *Doyle v. Ohio* (1976), 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91. The admission of testimony by a police officer regarding an accused's post-arrest silence constitutes reversible error when "it is not clear beyond a reasonable doubt that absent this statement of the officer no juror could have entertained a reasonable doubt as to defendant's guilt." *State v. Motley* (1985), 21 Ohio App.3d 240, 242, 21 OBR 256, 258–259, 486 N.E.2d 1259, 1262. This is so even if the trial court offers an explicit instruction to the jury to disregard such statement. *Id.* In other words, if without this statement any juror could still have a reasonable doubt as to appellant's guilt, so that the statement may be said to have made the difference between appellant's conviction and acquittal, the admission of the statement resulted in prejudice to appellant and would require reversal.

In order to determine whether the allusion to appellant's post-arrest silence constitutes reversible error, this court must decide whether the remaining evidence against appellant supported her conviction beyond a reasonable doubt. If Thompson was unavailable for trial, and her deposition properly admitted, the jury would have had sufficient evidence before it upon which to find appellant guilty beyond a reasonable doubt. Rountree's testimony did not make the difference between acquittal and conviction, and no prejudicial error may be based thereupon.

Although Rountree should not have inquired whether appellant knew Price after appellant had apparently asserted her right to remain silent, and although Rountree's statement that appellant denied knowing Price was improperly admitted, no material prejudice attached, given the remaining evidence of guilt.

 Appellant also charges that the trial court should have allowed appellant to cross-examine Rountree as to the identity of the witnesses he interviewed as a part of the investigation. At trial, defense counsel asked Rountree the names of the witnesses he spoke to during the investigation and Rountree replied that, other than Louise Thompson, he could not remember but offered to check his notes to refresh his recollection. The state objected on the basis of relevancy, noting that, in any event, Rountree could not testify to what those witnesses told him. The court sustained this objection.

Appellant suggests that the failure of the trial court to allow appellant to discover what other person or persons were interviewed by Rountree denied her access to what could have been exculpatory evidence. However, "[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *Agurs,* 427 U.S. at 109–110, 96 S.Ct. at 2400, 49 L.Ed.2d at 353–354. Even if the trial court erred in refusing to allow appellant to cross-examine Rountree in this instance, we cannot say the trial court's ruling rose to the level of reversible error, since appellant only alludes to the possibility that Rountree's revealing such information would have helped her case or changed the outcome of the trial.

 Regarding appellant's assertion that the trial court improperly admitted Rountree's testimony regarding appellant's guilt and his suggestion of appellant's criminal background, appellant specifically points to Rountree's statement on direct that appellant was a suspect with whom he was familiar, that he was aware that appellant had a previous warrant, and that he had filed the murder charges against appellant himself. Appellant failed to object to these statements, which must be analyzed under the plain error rule.

 Generally, objections not raised in the trial court are waived; however, "plain error" may be raised for the first time on appeal. See *State v. Awan* (1986), 22 Ohio St.3d 120, 122, 22 OBR 199, 201–202, 489 N.E.2d 277, 278–279; Crim.R. 52(B). "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph three of the syllabus. Under Evid.R. 103, error generally may not be predicated on a ruling allowing evidence unless a substantial right is affected and a timely objection or motion to strike appears in the record. Evid.R. 103(A). However, plain error is always reviewable and comprises errors which are so substantial as to result in a clear miscarriage of justice. *State v. Craft* (1977), 52 Ohio App.2d 1, 6 O.O.3d 1, 367 N.E.2d 1221.

The statements made by Rountree, that appellant was known to him and that he had filed the charges against her, even when taken together, are not so substantial as to result in a miscarriage of justice, since it cannot be said that, absent such evidence, appellant would not have been convicted.

Appellant argues that the following exchange during direct examination was prejudicial to appellant because it suggested that an arrest warrant had been issued for appellant prior to the murder:

"[Prosecutor] Q. Okay. What did you find when you arrived?

"[Rountree] A. She was upstairs in an apartment asleep on the couch. I was aware that she had a warrant on her for—

"Q. Well—[.]"

Rountree did not state the basis for the arrest warrant. Although it would have been better for the jury not to have heard this statement, there was not prejudice so grave that a manifest miscarriage of justice resulted, and so we do not find that plain error proceeded from Rountree's allusion to a prior warrant.

Finally, appellant raises issue with Rountree's testimony during cross-examination by defense counsel:

"Q. * * * What were you asking for in the search warrant?

"A. For property worn by the suspect during the commission of the crime, to wit, blue dress, slip and brown shoes.

"Q. So it was your belief that the crime was committed by a person wearing a blue dress, a slip and brown shoes?

"A. No, it was my belief that Deborah Rowe committed the crime because, you know, I knew her, and based on the—

"Ms. Beauchamp: Objection, your honor, and move to strike. It's not responsive. Could the jury be instructed—

"Ms. Wonnell: May we approach?

"The Court: One at a time, please. No, I'll sustain the objection. Strike the last comment."

Appellant claims that Rountree's answer, that he believed appellant committed the crime, was grounds for mistrial because, despite the court's instruction to strike the comment, the jury was unable to do so. However, defense counsel's question asked Rountree to express his opinion as to who committed the crime, and so any prejudicial effect of the jury's having heard Rountree's answer was invited error. Moreover, the jury may be presumed to have obeyed the instruc-

tion of the trial court to disregard Rountree's answer. See *Pang v. Minch* (1990), 53 Ohio St.3d 186, 559 N.E.2d 1313.

For the foregoing reasons, appellant's third, fifth and seventh assignments of error are overruled.

Appellant's fourth assignment of error asserts that the trial court erred in refusing the jury's request to review the transcript of Thompson's deposition and in answering this jury request out of appellant's presence.

Regarding the jury's request to see the transcription of Thompson's deposition, the court reporter recorded the following:

"Thereupon, at 9:24 o'clock a.m., the jury sent to the court a written question, which reads as follows:

" 'Question—May we see the transcript from the testimony given by Louise Thompson?'

"The court returned the following answer:

" 'You must rely on your collective memory.' "

The record does not reveal whether appellant was, in fact, present at the time the trial court responded to the jury's written question; therefore, appellant's presence may be presumed. *State v. Blackwell* (1984), 16 Ohio App.3d 100, 101, 16 OBR 106, 107–108, 474 N.E.2d 671, 672–673. Nor was there evidence suggesting that appellant's counsel was not present at the time the trial court answered the jury's inquiry. Blackwell recognized that certain communications between the trial court and the jury, out of the presence of the accused, may be harmless, where counsel is present and the instructions are not erroneous. In this matter, since the record is silent, counsel was presumed to be present when the trial court answered the jury's question and the instruction given by the trial court was proper. Appellant's fourth assignment of error is overruled.

Appellant's sixth assignment of error alleges that the trial court erred by allowing jury deliberations to continue when it had reason to believe that the jury was deadlocked and that one of the jurors was sick. On the second day of deliberations, the jury wrote to the court:

"After discussion of all evidence and talk among the jurors, the vote taken had shown a split of 11 and 1. The single vote has stated that nothing will change the opinion."

The court then charged the jury pursuant to *State v. Howard* (1989), 42 Ohio St.3d 18, 537 N.E.2d 188, paragraph two of the syllabus, certiorari denied, *Ohio v.*

*Howard* (1989), 493 U.S. 873, 110 S.Ct. 203, 107 L.Ed.2d 157, over appellant's objection, and the jury resumed deliberations.[1]

On the morning of the third day of deliberations, a juror arrived seventy-five minutes later, saying that he was ill. The jury resumed deliberations upon his arrival. Appellant objected, arguing that, assuming the juror was the dissenting juror, it was a violation of appellant's due process rights to force an ill juror to continue deliberating when, in addition to fighting illness, the juror was faced with the pressure to acquiesce to the majority of the jury. After approximately ninety minutes of deliberation on the third day, the jury returned a unanimous guilty verdict and was polled.

■ Fourteen days later, appellant filed motions for mistrial, pursuant to R.C. 2953.21(A), and acquittal, pursuant to Crim.R. 29(C), attaching an affidavit in which the juror stated that, had he not been sick and in pain, he would not have voted guilty.

■ The admissibility of testimony or affidavits of jurors, adduced in order to impeach a verdict, generally hinges upon whether such statements are intrinsic or extrinsic to the verdict itself. Testimony or affidavits which address matters intrinsic to the verdict, that is, directly related to the outcome of deliberations, are generally inadmissible. *Tanner v. United States* (1987), 483 U.S. 107, 107 S.Ct. 2739, 97 L.Ed.2d 90. See, also, Evid.R. 606(B). Noting that federal courts have found jurors' insanity and inability to understand English to be intrinsic to the verdict, *Tanner* held that extreme intoxication was intrinsic, so that the affected jurors' affidavits were not grounds for vacating the verdict or even requiring the trial court to hold a hearing. *Tanner* indicated that:

" * * * However severe their effect and improper their use, drugs or alcohol voluntarily ingested by a juror seems no more an 'outside influence' than a virus, poorly prepared food, or a lack of sleep." *Id.* at 122, 107 S.Ct. at 2748, 97 L.Ed.2d at 107.

---

1. The pertinent portion of *Howard* reads as follows:
 "[W]e approve the following supplemental instruction: 'The principal mode, provided by our Constitution and laws, for deciding questions of fact in criminal cases, is by jury verdict. In a large proportion of cases, absolute certainty cannot be attained or expected. Although the verdict must reflect the verdict of each individual juror and not mere acquiescence in the conclusion of your fellows, each question submitted to you should be examined with proper regard and deference to the opinions of others. * * * It is your duty to decide the case, if you can conscientiously do so. You should listen to one another's arguments with a disposition to be persuaded. Do not hesitate to reexamine your views and change your position if you are convinced it is erroneous. If there is disagreement, all jurors should reexamine their positions, given that a unanimous verdict has not been reached. * * * ' "

■ In Ohio, there is a second prerequisite for admission of evidence from a juror impeaching a verdict: evidence *aliunde,* or extraneous, independent evidence from a non-juror possessing first-hand knowledge. *State v. Schiebel* (1990), 55 Ohio St.3d 71, 564 N.E.2d 54, certiorari denied *Warner v. Ohio* (1991), 499 U.S. 961, 111 S.Ct. 1584, 113 L.Ed.2d 649.

The juror's affidavit fails to satisfy either prerequisite: personal illness is intrinsic to a juror's vote, and the affidavit is not supported by evidence *aliunde.* Therefore, the juror's affidavit is not admissible and could not be considered by the trial court or this court.

■ The decision whether to declare a mistrial and discharge the jury, pursuant to R.C. 2945.36, is within the sound discretion of the trial court. *State v. Scott* (1986), 26 Ohio St.3d 92, 96, 26 OBR 79, 82–83, 497 N.E.2d 55, 59. This is true particularly when a juror is ill. *Bowman v. Alvis* (1950), 88 Ohio App. 229, 231–232, 44 O.O. 389, 390–391, 96 N.E.2d 605, 606–607 (individual juror discharged due to illness); *State v. Sallee* (1966), 8 Ohio App.2d 9, 37 O.O.2d 5, 220 N.E.2d 370 (individual juror discharged due to illness of family member). Therefore, this court may only reverse the decision of the trial court to deny the motion for mistrial and allow the jury verdict to stand where the trial court's attitude in rendering its decision was arbitrary, unreasonable or unconscionable. *Steiner v. Custer* (1940), 137 Ohio St. 448, 19 O.O. 148, 31 N.E.2d 855.

Since the juror's affidavit is inadmissible, the only remaining evidence to support appellant's allegation was that the juror arrived seventy-five minutes late on the third day of deliberations because he was ill. There is no evidence in the record that anyone coerced him into voting as he did or that he asked either to be excused from serving or that deliberations be delayed. Indeed, it is not even clear that the illness persisted after he arrived on the third day. Finally, there is no evidence that defense counsel requested that the trial court question the juror regarding his illness.[2]

Finding there was no evidence properly before the trial court which would have allowed the court to discharge the jury, we conclude the trial court did not abuse its discretion in allowing the jury to continue deliberating after the juror's late arrival on the third day of deliberations.

■ Appellant also relies on *State v. Sabbah* (1982), 13 Ohio App.3d 124, 13 OBR 155, 468 N.E.2d 718, in arguing that the trial court should have granted a

---

**2.** However, we express no opinion as to whether the trial court would have been obliged to conduct such an inquiry had the court been asked to do so. See *State v. Shields* (1984), 15 Ohio App.3d 112, 119, 15 OBR 202, 210, 472 N.E.2d 1110, 1118–1119.

mistrial because the court's supplemental instructions to the jury after it reported an eleven-to-one deadlock amounted to coercion of the lone juror.

In *Sabbah*, the defendant sought reversal of his murder conviction on the grounds that it was error to order further deliberations after the evenly divided jury informed the court that it could not render a fair verdict because of insufficient evidence. The court held that the trial court's statements "prejudicially intimated to the jurors that they should unanimously agree upon a verdict despite their expressed inability to decide the case fairly." (Emphasis *sic.*) *Id.* at 139, 13 OBR at 171–172, 468 N.E.2d at 734.

Appellant's suggestion of coercion of the jury is not well taken. First, the *Sabbah* holding was limited to the facts in that case. More importantly, since *Sabbah*, the Ohio Supreme Court has approved the *"Howard* charge," a supplemental instruction given juries deadlocked in a criminal case. *Howard, supra.* Here, the trial court did nothing more than read the *Howard* charge to a deadlocked jury, and so did not err. We overrule appellant's sixth assignment of error.

Appellant's second, third, fourth, fifth, sixth and seventh assignments of error are overruled. Appellant's first assignment of error is sustained. Accordingly, the judgment of the trial court is reversed and this matter is remanded to the trial court with instructions to determine whether or not Louise Thompson was unavailable as set forth in Evid.R. 804 and this opinion. If the trial court determines that Thompson was unavailable as a witness, the judgment of the trial court is affirmed subject to proper appeal of that issue. If the trial court determines Thompson was available as a witness, the trial court shall grant appellant a new trial.

*Judgment reversed*
*and cause remanded*
*with instructions.*

JOHN C. YOUNG and CLOSE, JJ., concur.

## ON MOTION FOR RECONSIDERATION

### Decided Feb. 10, 1994

BOWMAN, Judge.

Appellee, the state of Ohio, has filed a motion for reconsideration, requesting this court to reconsider its decision rendered October 26, 1993. The state contends that, in remanding this matter, this court should have ordered the trial

court to determine the current availability of Louise Thompson, a key witness for the state, and further ordered that, if the trial court finds that the witness is now unavailable, the court should reinstate its judgment of conviction rather than conduct a new trial. Appellant has not responded to this motion.

■ The test to be applied in ruling on a motion for reconsideration in the court of appeals is whether the motion calls to the attention of the court an obvious error in its decision, or raises an issue for consideration that was either not considered at all or was not fully considered by the court when it should have been. *Matthews v. Matthews* (1981), 5 Ohio App.3d 140, 5 OBR 320, 450 N.E.2d 278.

■ In our decision, we found that the trial court erroneously admitted the state's deposition of Louise Thompson in the absence of a proper showing that Thompson was unavailable to appear at trial. In remanding the matter, this court stated:

" * * * Accordingly, the judgment of the trial court is reversed and this matter is remanded to the trial court with instructions to determine whether or not Louise Thompson was unavailable as set forth in Evid.R. 804 and this opinion. If the trial court determines that Thompson was unavailable as a witness, the judgment of the trial court is affirmed subject to proper appeal of that issue. If the trial court determines Thompson was available as a witness, the trial court shall grant appellant a new trial."

The state asserts that it would serve no purpose to hold a new trial should the trial court determine, on remand, that Thompson was available at the time of appellant's trial, but is currently unavailable, since in a new trial the state would simply re-introduce the deposition of Thompson. In support of this argument, the state directs us to *United States v. Faison* (C.A.3, 1982), 679 F.2d 292.

In *Faison*, Cal Mancuso, a key witness, testified on behalf of the government, but the jury was unable to reach a verdict and a mistrial was declared. Prior to the new trial, Mancuso developed heart trouble and surgery was indicated. Rather than grant defense counsel's motion for a continuance, so that Mancuso's live testimony could be procured, the court determined that the witness was unavailable and permitted the government to introduce Mancuso's testimony from the first trial. The court based this decision upon its belief that the defendant's speedy trial rights would be violated by continuing the trial; however, on appeal, the Third Circuit Court of Appeals held that the court had misinterpreted the Speedy Trial Act, and had failed to sufficiently articulate any

other reason for admitting Mancuso's former testimony. The Third Circuit stated that:

"Since the court's error—one of non-constitutional dimensions, deprived Faison, at most, of the opportunity to present Mancuso's testimony live, an outright reversal for a new trial is inappropriate without further inquiry. By now Mancuso had undergone surgery. Whether he has recovered sufficiently to testify is not known. If his health is such that he would be unavailable at a new trial, granting a new trial would serve no purpose. Faison already had a trial at which Mancuso's prior testimony was read to the jury. If he could testify at a new trial, however, Faison should be afforded the opportunity to have him do so. Thus the case will be remanded to the trial court for appropriate proceedings to determine whether Mancuso would now be available to testify. If he would be, the trial court is directed to grant a new trial." *Faison* at 297–298.

The state herein asserts this court should have instructed the trial court, upon remand, to reinstate the judgment of conviction, should the court find that Thompson is now unavailable to appear as a witness at trial. However, we find that *Faison* is not persuasive, in part because that decision specifically indicated the trial court's error was of non-constitutional dimensions. By contrast, this court determined the state had violated appellant's constitutional right to confrontation by failing to demonstrate Thompson's unavailability for trial, and that this error could not have been harmless because the testimony provided by Thompson went to the central question of appellant's guilt. As was emphasized in *Ohio v. Roberts* (1980), 448 U.S. 56, 64, 100 S.Ct. 2531, 2538, 65 L.Ed.2d 597, 606, the absence of proper confrontation at trial jeopardizes the integrity of the entire fact-finding process. As a result, the entire trial was tainted by the magnitude of the error and, if the trial court now determines Thompson was available at the time of trial, appellant is entitled to the remedy of a new trial.

The state's position would not sufficiently protect a defendant's right to confrontation since, in many instances, there would be no adequate remedy for a violation of that right. Thus, the success of an argument that an ill or elderly witness was available for trial could be illusory if the passage of time results in the witness's further decline or death, and the trial court, on remand, simply reinstates the judgment of conviction. Although we emphasize there is no evidence of prosecutorial misconduct in the case at bar, it is conceivable that an unscrupulous prosecutor, knowing that no penalty would attach to a violation of the Confrontation Clause, could manipulate events so that a witness with doubtful credibility need never come face-to-face with the jury.

The state maintains that, if the trial court finds that Thompson was available but is now unavailable, the state would present all of the same evidence against

appellant and the outcome of a retrial would be the same. We disagree that this is an assumption either this court or the trial court should make, since too many variables are involved. Instead, it would appear a judgment of conviction on retrial would not be guaranteed, and that this is why the state urges this court to determine that, if Thompson is now unavailable, appellant's conviction should be reinstated. We do not believe that the state, having violated appellant's right to confrontation, should now be almost guaranteed a conviction upon remand.

The court's remand order in *Faison* focuses upon the injury or inconvenience to the government which could result from retrying a case in which a witness is now unavailable. However, the Confrontation Clause was not intended as a protection to the state, or to serve the convenience of the prosecutor. Although *Roberts* acknowledged that the right to confrontation must be tempered by application of the hearsay rule in order to protect public policy considerations and to promote effective law enforcement, the necessity of interpreting the Confrontation Clause in conjunction with the hearsay rule must not be permitted to defeat the clause's protection of individual rights.

Whether or not it would serve a purpose to retry this case if Thompson was once available and is now unavailable is not a matter on which this court should speculate. Appellant suffered a violation of her constitutional rights by the failure of the state to adequately prove, and the failure of the trial court to adequately determine, that Thompson was unavailable for trial prior to introducing her deposition. If, on remand, the trial court finds that Thompson was available, appellant is entitled to the constitutional remedy of a new trial, regardless of whether Thompson is currently available.

For the foregoing reasons, we find appellee's motion for reconsideration raises no issues which were before us but were not fully considered and ruled upon by the court, and appellee's motion is overruled.

*Motion for reconsideration denied.*

JOHN C. YOUNG, J., concurs.

CLOSE, J., dissents.

CLOSE, Judge, dissenting.

*United States v. Faison* (C.A.3, 1982), 679 F.2d 292, cited by the majority, is on facts that are substantially on all fours with the case at bar. The issue in that case was the availability of a witness whose testimony was otherwise available.

(In that case because of having previously testified in a mistrial, in this case because of a deposition.) The reasoning of the Third Circuit in *Faison* is sound. In *Faison* at 297–298, the court stated:

" * * * If his health is such that he would be unavailable at a new trial, granting a new trial would serve no purpose. Faison already had a trial at which Mancuso's prior testimony was read to the jury. If he could testify at a new trial, however, Faison should be afforded the opportunity to have him do so. * * * "

In effect, on remand, there are three possible scenarios: (1) if the court finds that the witness was unavailable at his first trial, the conviction will be affirmed; and (2) if the witness was available at the first trial and remains available, there will be a new trial as ordered. The third scenario, however, is the one that this motion is addressed to: if the witness was available at the first trial and unavailable at the second, under the reasoning in the *Faison* case, there is absolutely no reason why this matter should be retried and the judgment should be affirmed.

While it is possible that a manipulation by the prosecutor resulting in misconduct could result in a miscarriage under other facts, under the facts of this case it is quite clear that the procedural foundation for the evidence regarding availability was lacking rather than there being any question about prosecutorial misconduct involved.

Lacking a showing of bad faith or prosecutorial misconduct, and upon the showing that a reversal was for failure to comply with the procedure required under the Ohio Rules of Evidence rather than substance of the rules, this case need not be tried again unless, in fact, the witness in question was available at the first trial and remains available at this time.

I respectfully dissent.