[Cite as *State v. Wilson*, 2018-Ohio-5167.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                        |     | JUDGES:                      |
| ---------------------- | --- | ---------------------------- |
| STATE OF OHIO          | :   | Hon. W. Scott Gwin, P.J.     |
|                        | :   | Hon. Patricia A. Delaney, J. |
| Plaintiff-Appellee     | :   | Hon. Craig R. Baldwin,  J.   |
|                        | :   |                              |
| -vs-                   | :   |                              |
|                        | :   | Case No. 18CAA040035         |
| F. LEON WILSON         | :   |                              |
|                        | :   |                              |
| Defendant-Appellant    | :   | OPINION                      |

CHARACTER OF PROCEEDING:       Appeal from the Delaware County Court of
                               Common Pleas, Case No.15CRI-07-0319

JUDGMENT:                      Affirmed

DATE OF JUDGMENT ENTRY:        December 20, 2018

APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

DOUGLAS DUMOLT                            DENNIS BELLI
Assistant Prosecuting Attorney            536 South High St. Fl. 2
140 North Sandusky St., 3rd Floor         Columbus, OH 43215-5785
Box 8006
Delaware, OH 43015-8006

*Gwin, P.J.*

{¶1}    Appellant F. Leon Wilson ["Wilson"] appeals from the April 3, 2018 judgment entry of the Delaware County Court of Common Pleas overruling his petition for post-conviction relief.

*Facts and Procedural History*

{¶2}    On July 17, 2015, the Delaware County Grand Jury indicted Wilson on three counts of gross sexual imposition in violation of R.C. 2907.05.  Counts 1 and 2 pertained to E.C., four years old, and Count 3 pertained to K.P., seven years old.  Each count included a school safety zone specification (R.C. 2941.143).  The charges arose from separate incidents between Wilson and E.C. and Wilson and K.P. while at school.  Wilson was their chess teacher.

{¶3}    On April 9, 2015, E.C. told her parents her chess teacher touched her, demonstrating the touch by placing her hand on top of her clothes between her legs and moving her hand up and down.  E.C. told her forensic interviewer the same story.

{¶4}    Following Wilson's arrest, which was publicized in the press, K.P.'s father, asked K.P. if anything had happened to her since she had been a student in Wilson's chess class in February and March 2015.  K.P. stated it happened once.  K.P. told her forensic interviewer that Wilson asked her for permission to touch her vagina and when she gave him permission, he rubbed her vagina over her clothing.

{¶5}    On August 31, 2015, Wilson filed a motion to sever Counts 1 and 2 from Count 3.  A hearing was held on September 21, 2015.  By judgment entry filed September 24, 2015, the trial court denied the motion.

{¶6} On December 5, 2015, Wilson filed a motion for competency hearings of E.C. and K.P. prior to either being permitted to testify. A hearing was held on January 4, 2016. The state indicated it would not be calling E.C. as a witness. The trial court conducted an examination of K.P. and determined K.P. to be competent to testify.

{¶7} On January 4, 2016, Wilson filed a motion to compel confrontation, objecting to the playing of E.C.'s videotaped forensic interview during the trial. A hearing was held on February 11, 2016.

{¶8} On January 21, 2016, Wilson filed a supplemental motion on the issuance of severance. By judgment entry filed February 22, 2016, the trial court again denied the motion to sever, and denied Wilson's motion to compel confrontation, finding E.C.'s out-of-court statements were admissible as pertaining to medical diagnosis or treatment.

{¶9} A jury trial commenced on February 23, 2016, but the jury could not reach a verdict on any of the counts and a mistrial was declared. Wilson did not object to the trial court's supplemental instruction referred to as a *Howard* charge. *See State v. Howard*, 42 Ohio St.3d 18, 537 N.E.2d 188(1998), paragraph two of the syllabus. Wilson did not object to the declaration of a mistrial because the jury was deadlocked. Thereafter, a different judge was assigned to the case.

{¶10} On May 27, 2016, Wilson reasserted his motion to exclude E.C.'s videotaped interview, claiming it violated his right to confrontation and it did not fit the medical diagnosis or treatment exception to the hearsay rule. Again, the trial court denied the motion.

{¶11} A second jury trial commenced on June 6, 2016. The jury found appellant guilty of Counts 1 and 3, and not guilty of Count 2. The jury also found the offenses were committed in a school safety zone.

{¶12} On June 24, 2016, Wilson filed a motion for judgment of acquittal and motion for new trial. By judgment entry filed July 21, 2016, the trial court denied the motions.

{¶13} By judgment entry filed August 2, 2016, the trial court sentenced Wilson to an aggregate term of eight and one-half years in prison. This Court affirmed Wilson's convictions and sentence. *State v. Wilson,* 5th Dist. Delaware No. 16-CAA-08-0035, 2017-Ohio-5724 ["*Wilson, I*"]. The Ohio Supreme Court declined to review Wilson's case. *State v. Wilson,* 151 Ohio St.3d 1511, 2018-Ohio-365, 90 N.E.3d 950.

{¶14} On October 2, 2017, Wilson filed an application to reopen his direct appeal alleging that his Appellate counsel was ineffective for failing to raise a number of specific arguments relating to trial counsel's alleged deficiencies. On January 19, 2018, this Court denied Wilson's application to reopen his direct appeal. On February 21, 2018, the Ohio Supreme Court declined to accept jurisdiction in this matter. *State v. Wilson,* 152 Ohio St.3d 1467, 2018-Ohio-1795, 97.N.E. 3d 502.

{¶15} On September 13, 2017, Wilson filed a Petition for Post-Conviction Relief ["PCR"]. In support of the motion, Wilson attached affidavits purportedly from several jurors who participated in his first trial that resulted in a mistrial. Additionally, he submitted affidavits from his trial counsels and their private investigators.

{¶16} In an entry filed April 3, 2018, the trial court denied the petition for post-conviction relief.

*Assignments of Error*

{¶17} "I. THE DISMISSAL OF THE PETITION FOR POST-CONVICTION RELIEF WITHOUT A HEARING VIOLATED R.C. 2953.21(D) AND DEPRIVED DEFENDANT-APPELLANT OF HIS RIGHT TO MEANINGFUL REVIEW OF HIS CONSTITUTIONAL CLAIMS FOR RELIEF.

{¶18} "II. POST-CONVICTION COUNSEL'S FAILURE TO RAISE ADDITIONAL INSTANCES OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL (RELATING TO A DEFECTIVE INDICTMENT, THE FIRST JURY'S NOT GUILTY VERDICT, AND DOUBLE JEOPARDY) DEPRIVED DEFENDANT-APPELLANT OF HIS SIXTH AND FOURTEENTH AMENDMENT RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL."

**Standard of Appellate Review - Post-conviction relief.**

{¶19} R.C. 2953.21(A) states in part,

(A)(1)(a) Any person who has been convicted of a criminal offense or adjudicated a delinquent child and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States… may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief.

**{¶20}** A petition for post-conviction relief is a means to reach constitutional issues that would otherwise be impossible to reach because the evidence supporting those issues is not contained in the record of the petitioner's criminal conviction. *State v. Murphy,* 10th Dist. Franklin No. 00AP-233, 2000 WL 1877526(Dec. 26, 2000); *Accord, State v. Zich,* 6th Dist. Lucas No. L-15-1263, 2017-Ohio-414, ¶9. Although designed to address claimed constitutional violations, the post-conviction relief process is a civil collateral attack on a criminal judgment, not an appeal of that judgment. *State v. Calhoun*, 86 Ohio St.3d 279, 281, 714 N.E.2d 905(1999); *State v. Steffen*, 70 Ohio St.3d 399, 410, 639 N.E.2d 67(1994). A petition for post-conviction relief, thus, does not provide a petitioner a second opportunity to litigate his or her conviction, nor is the petitioner automatically entitled to an evidentiary hearing on the petition. *State v. Jackson*, 64 Ohio St.2d 107, 110, 413 N.E.2d 819(1980). *State v. Lewis,* 5th Dist. Stark No. 2007CA00358, 2008-Ohio-3113 at ¶ 8.

**{¶21}** In post-conviction cases, a trial court has a gatekeeping role as to whether a defendant will receive a hearing. In *State v. Calhoun*, the Ohio Supreme Court held that a trial court could dismiss a petition for post-conviction relief without a hearing "where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that petitioner set forth sufficient operative facts to establish substantive grounds for relief." 86 Ohio St.3d 279, 714 N.E.2d 905(1999), paragraph two of the syllabus.

**{¶22}** In *State v. Phillips*, 9th Dist. Summit No. 20292, 2002-Ohio-823, the court noted,

Significantly, evidence outside the record alone will not guarantee the right to an evidentiary hearing. *State v. Combs* (1994), 100 Ohio App.3d 90, 97, 652 N.E.2d 205. Such evidence "'must meet some threshold standard of cogency; otherwise it would be too easy to defeat the holding of [*State v. Perry* (1967), 10 Ohio St.2d 175] by simply attaching as exhibits evidence which is only marginally significant and does not advance the petitioner's claim beyond mere hypothesis and a desire for further discovery.'" (Citation omitted.) *State v. Lawson* (1995), 103 Ohio App.3d 307, 315, 659 N.E.2d 362. Thus, the evidence must not be merely cumulative of or alternative to evidence presented at trial. *Combs,* 100 Ohio App.3d at 98, 652 N.E.2d 205.

{¶23} In *State v. Gondor*, the Ohio Supreme Court held that a trial court's decision granting or denying a post-conviction petition filed pursuant to R.C. 2953.21 should be upheld absent an abuse of discretion; a reviewing court should not overrule the trial court's finding on a petition for post-conviction relief that is supported by competent and credible evidence." 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77(2006), ¶ 58.

{¶24} An abuse of discretion exists where the reasons given by the court for its action are clearly untenable, legally incorrect, or amount to a denial of justice, or where the judgment reaches an end or purpose not justified by reason and the evidence. *Tennant v. Gallick,* 9th Dist. Summit No. 26827, 2014-Ohio-477, ¶35; In *re Guardianship of S .H.*, 9th Dist. Medina No. 13CA0066–M, 2013–Ohio–4380, ¶ 9; *State v. Firouzmandi,* 5th Dist. Licking No.2006–CA–41, 2006–Ohio–5823, ¶54.

## ISSUES FOR APPEAL

A. Whether the trial court abused its discretion in denying Wilson's petition for post-conviction relief. [Appellant's First Assignment of Error].

### 1. Affidavits of jurors, attorney and private investigator.

{¶25} Many of Wilson's arguments rely upon affidavits that he submitted in support of his PCR petition allegedly from three of the jurors from Wilson's first jury trial, an unsworn statement from a fourth juror, his trial counsels and private investigators.

#### a. Evid. R. 606, the Aliunde Rule.

{¶26} Evid.R. 606(B) governs the competency of a juror to testify,

(B) Inquiry Into Validity of Verdict or Indictment. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith. A juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear on any juror, only after some outside evidence of that act or event has been presented. However a juror may testify without the presentation of any outside evidence concerning any threat, any bribe, any attempted threat or bribe, or any improprieties of any officer of the court. A juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from

testifying will not be received for these purposes.  Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict * * * or concerning his mental processes in connection therewith. * * * His affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying will not be received for these purposes.

{¶27}  Evid.R. 606(B) is subject to the exception embodied in the aliunde rule, which permits a juror to offer testimony impeaching his verdict upon the presentation of impeachment evidence from a competent source other than a juror.  *See State v. Kehn*, 50 Ohio St.2d 11, 18, 361 N.E.2d 1330(1977), *certiorari denied*, 434 U.S. 858, 98 S.Ct. 180, 54 L.Ed.2d 130(1977).

{¶28}  The purpose of the aliunde rule is to maintain the sanctity of the jury room and the deliberations therein.  *State v. Reiner,* 89 Ohio St.3d 342, 350, 2000-Ohio-190, 731 N.E.2d 662*, reversed on other grounds, Ohio v. Reiner,* 532 U.S. 17, 121 S.Ct. 1252, 149 L.Ed.2d 158(2001).  The rule is designed to ensure the finality of jury verdicts and to protect jurors from being harassed by defeated parties. Id.  The rule requires a foundation from non-juror sources.  Thus, the Ohio Supreme Court has held that "the information [alleging misconduct] must be from a source which possesses firsthand knowledge of the improper conduct.  One juror's affidavit alleging misconduct of another juror may not be considered without evidence aliunde being introduced first."  *State v. Schiebel*, 55 Ohio St.3d 71, 75, 564 N.E.2d 54, 61 (1990).

**{¶29}** A juror cannot impeach his verdict by way of affidavit in an attempt to prove that it was rendered with an intention different from that disclosed by his vote in the verdict. *Cleveland Electric Illuminating Co. v. Astorhurst*, 18 Ohio St.3d 268, 480 N.E.2d 794(1985); *Long v. Cassiero*, 105 Ohio St. 123, 136 N.E. 888 (1922); *Sedgwick v. Kawasaki Cycleworks, Inc.*, 71 Ohio App.3d 117, 136, 593 N.E.2d 69(10th Dist. 1991); *State v. Rowe*, 92 Ohio App.3d 652, 674-75, 637 N.E.2d 29(10th Dist. 1993).

**{¶30}** The dangers inherent in vacating a jury verdict without extrinsic evidence of misconduct were recognized in the leading case of *Long v. Cassiero*,

> It would be a dangerous precedent to establish in this state were we to announce the principle that jurors, after their separation, should be allowed to change their verdict to conform to their real intention * * *.

105 Ohio St. 123, 126, 136 N.E. 888.

**{¶31}** The *Long* holding was followed in *Cleveland Electric Illum. Co. v. Astorhurst*, 18 Ohio St.3d 268, 480 N.E.2d 794(1985). In *Cleveland Elec. Illum. Co.,* the trial court erroneously instructed the jury that eight rather than nine members of a 12–member jury needed to agree upon the verdict. Although nine jurors signed the verdict form, one of those nine later averred that he had not agreed with the verdict but had signed the form because he believed that his vote was purely academic. Id. at 273–274. The Supreme Court rejected the argument that the trial court's erroneous instruction necessarily rendered the verdict invalid. Instead, the Court held that the question was whether the instruction itself was so misleading that it could have directly induced an erroneous verdict. 18 Ohio St.3d. at 274, 480 N.E.2d 794, *quoting Long v. Cassiero,* 105 Ohio St. 123, 136 N.E. 888 (1922). The Supreme Court noted that the trial court had instructed

the jurors to sign the form only if they concurred in the verdict and had not indicated that any juror should sign the form "(a) after eight other jurors had signed it, or (b) when it became 'academic' for him to refuse to do so." Id. at 275, 480 N.E.2d 794. Because the inaccurate instruction could not have induced the ninth juror to vote against his true intent, there was no showing of prejudicial error. Id. The Court held that a juror was not allowed to impeach his verdict by way of affidavit in an attempt to prove it was different from that disclosed by his vote in the verdict. In *Long v. Cassiero* the Ohio Supreme Court stated "[i]f the erroneous verdict was brought about by the charge of the court, error should be predicated, not upon affidavits that the jury misunderstood the charge, but upon the ground that the charge was so misleading and prejudicial as to induce the erroneous verdict." Id. at 128, 136 N.E. 888. *See also, Cleveland Elec. III. Co. v. Astorhurst Land Co.*, 18 Ohio St.3d 268, 274, 480 N.E.2d 794, 800(1985).

**{¶32}** In *Warger v. Shauers*, the United States Supreme Court held that Rule 606 (b) of the Federal Rules of Evidence, which precludes evidence from being offered "about any statement made or incident that occurred during the jury's deliberations," bars the admission of "juror testimony during a proceeding in which a party seeks to secure a new trial on the ground that a juror lied during voir dire [in order to conceal bias]." (Internal quotation marks omitted.) 135 S.Ct. 521, 525,190 L.Ed.2d 422(2014). The court reasoned that the plain text of the rule reflected the "federal approach" to impeachment of jury verdicts in that it "prohibits[s] the use of *any* evidence of juror deliberations, subject only to the express exceptions for extraneous information and outside influences." (Emphasis in original.) *Warger,* 135 S.Ct. at 527. Extraneous information, the court explained, consists of information "derive[d] from a source 'external' to the jury," such as

"publicity and information related specifically to the case the jurors are meant to decide, while 'internal' matters include the general body of experiences that jurors are understood to bring with them to the jury room." Id., at 529. The petitioner in *Warger* sought to admit an affidavit averring that a juror made statements during deliberations suggesting that she had lied during voir dire about her impartiality and ability to award damages for negligence in an automobile crash. *Warger,* 135 S.Ct. at 524. The court concluded that the affidavit contained "'internal'" information, and was therefore inadmissible, because it contained information that may have informed the juror's "general views about negligence liability for car crashes," but no information providing her or the rest of the jury with information about the specific car crash at issue in the case. *Warger*, at 529.

{¶33} The *Warger* noted,

For those who consider legislative history relevant, here it confirms that this choice of language was no accident. Congress rejected a prior version of the Rule that, in accordance with the Iowa approach[1], would have prohibited juror testimony only as to the "effect of anything upon ... [any] juror's mind or emotions ... or concerning his mental processes." Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, Revised Draft of Proposed Rules of Evidence for the United States Courts and Magistrates, 51 F.R.D. 315, 387 (1971); see *Tanner v. United States*, 483 U.S. 107, 123–125, 107 S.Ct. 2739, 97

---

[1] "The Iowa rule derived from *Wright v. Illinois & Miss. Tel. Co.,* 20 Iowa 195 (1866), in which the Iowa Supreme Court held that a trial court considering a motion for a new trial should have accepted the affidavits of four jurors who claimed that their damages verdict had been determined by taking the average of the sums each juror thought proper (a "quotient" verdict). *Id.,* at 212–213. The *Wright* court reasoned that, unlike evidence of a juror's subjective intentions in reaching a verdict, whether the verdict had been obtained in this fashion was an "independent fact" and thus could and should be proved by any available evidence. *Id.,* at 211." *Warger,* 135 S.Ct. 521, at note 2.

L.Ed.2d 90 (1987) (detailing the legislative history of the Rule). Thus Congress "specifically understood, considered, and rejected a version of Rule 606(b)" that would have likely permitted the introduction of evidence of deliberations to show dishonesty during voir dire. Id., at 125, 107 S.Ct. 2739.

\* \* \*

Warger, it seems, would restrict Rule 606(b)'s application to those claims of error for which a court must examine the manner in which the jury reached its verdict—claims, one might say, involving an inquiry into the jury's verdict. But the "inquiry" to which the Rule refers is one into the "validity of the verdict," not into the verdict itself. The Rule does not focus on the means by which deliberations evidence might be used to invalidate a verdict. It does not say "during an inquiry into jury deliberations," or prohibit the introduction of evidence of deliberations "for use in determining whether an asserted error affected the jury's verdict." It simply applies "[d]uring an inquiry into the validity of the verdict"—that is, during a proceeding in which the verdict may be rendered invalid. Whether or not a juror's alleged misconduct during voir dire had a direct effect on the jury's verdict, the motion for a new trial requires a court to determine whether the verdict can stand.

*Warger*, 135 S.Ct. 521, 527-528. *Accord, State v. Reiner,* 89 Ohio St.3d 342, 350, 2000-Ohio-190, 731 N.E.2d 662, *reversed on other grounds, Ohio v. Reiner,* 532 U.S. 17, 121 S.Ct. 1252, 149 L.Ed.2d 158(2001).

**{¶34}** The only exception that the Supreme Court has made to Rule 606(b)(1)'s prohibitions is "when, after the jury is discharged, a juror comes forward with compelling evidence that another juror made clear and explicit statements indicating that racial animus was a significant motivating factor in his or her vote to convict." *Pena-Rodriguez v. Colorado,* __ U.S. __, 137 S.Ct. 855, 869, 197 L.Ed.2d 107 (Mar. 6, 2017).

**{¶35}** The affidavit of the attorneys and the investigators merely relay the jurors' statements. This evidence is also barred by Evid.R. 606,

> In order to permit juror testimony to impeach the verdict, a foundation of extraneous, independent evidence must first be established. This foundation must consist of information from sources other than the jurors themselves, *Wicker v. Cleveland,* 150 Ohio St. 434, 38 O.O. 299, 83 N.E.2d 56(1948), and the information must be from a source which possesses firsthand knowledge of the improper conduct ... Similarly, where an attorney is told by a juror about another juror's possible misconduct, the attorney's testimony is incompetent and may not be received for the purposes of impeaching the verdict or for laying a foundation of evidence aliunde. *See Tasin v. SIFCO Industries, Inc.* (1990), 50 Ohio St.3d 102, 553 N.E.2d 257; *Dodd v. McCammon* (1920), 14 Ohio App. 160, 32 Ohio C.C. (N.S.) 68".

*State v. Schiebel*, 55 Ohio St.3d 71, 75-76, 564 N.E.2d 54, 61(1990).

*b. A jury in a criminal case cannot be reassembled nearly 18 months after discharged to correct an alleged error in the verdict.*

**{¶36}** Recently, in *Dietz v. Bouldin*, ⸺ U.S. ⸺, 136 S.Ct. 1885, 1891, 195 L.Ed.2d 161 (2016), a civil case, the Supreme Court held "that a federal district court has

the inherent power to rescind a jury discharge order and recall a jury for further deliberations after identifying an error in the [ ] verdict[s]." In *Dietz,* the Supreme Court expressly refrained from addressing a trial court's ability to recall discharged jurors in a criminal case,

> Finally, we caution that our recognition here of a court's inherent power to recall a jury is limited to civil cases only. Given additional concerns in criminal cases, such as attachment of the double jeopardy bar, we do not address here whether it would be appropriate to recall a jury after discharge in a criminal case. *See Smith v. Massachusetts*, 543 U.S. 462, 473–474, 125 S.Ct. 1129, 160 L.Ed.2d 914 (2005).

136 S.Ct. at 1895.

{¶37} In *Dietz*, a jury reached a verdict; the trial court discharged the jury; and the jurors left the courtroom. "A few minutes later, the [trial] court ordered the [courtroom] clerk to bring the jurors back." 136 S.Ct. at 1890. Outside the jurors' presence, the trial court explained to the parties' counsel that the trial court had just realized that the verdict was legally impermissible. 136 S.Ct. at 1890. The jurors returned to the courtroom, and the trial court questioned them and confirmed that they had not discussed the case with anyone else. 136 S.Ct. at 1891. The trial court re-instructed the jurors and ordered them to begin deliberating again. 136 S.Ct. at 1891. The jurors did so, and reached a new, legally permissible verdict. The losing party appealed and contended that the trial court erred in recalling the jury. The Supreme Court disagreed and explained:

> [T]wo principles—an inherent power must be a reasonable response to a specific problem[,] and the power cannot contradict any

express rule or statute—support the conclusion that a [trial court] has a

limited inherent power to rescind a discharge order and recall a jury in a civil

case where the [trial] court discovers an error in the [ ] verdict.

136 S.Ct. at 1892. In *Dietz*, the Supreme Court adopted instead a multi-factored

"inquiry focused on potential prejudice." *Dietz*, 136 S.Ct. at 1896. But *Dietz* cautioned

that its "recognition ... of a court's inherent power to recall a jury is limited to civil cases

only. It is thus unclear whether *Dietz* meant to leave in place the common law rule in

criminal cases, or whether, absent double-jeopardy concerns, *Dietz's* potential prejudice

rule should apply. Under either test, we have no difficulty concluding that there was no

error here." *United States v. McShan,* S.D. Ohio Nos. 17-3935/4075, 2018 WL 6271645

(Nov. 30, 2018).

**{¶38}** The common law rule was that once the judge discharged a jury, the jury

could not be re-called to amend its verdict. *Dietz*, 136 S.Ct. at 1897 (Thomas, J.,

dissenting) (describing the common law rule).

**{¶39}** In *Dietz,* the Supreme Court set forth the following factors that a trial court

should address in the decision to re-assemble a jury in a civil case,

Any suggestion of prejudice in recalling a discharged jury should

counsel a district court not to exercise its inherent power. A district court

that is considering whether it should rescind a discharge order and recall a

jury to correct an error or instead order a new trial should, of course,

determine whether any juror has been directly tainted—for example, if a

juror discusses the strength of the evidence with nonjurors or overhears

others talking about the strength of the evidence. But the court should also

take into account at least the following additional factors that can indirectly create prejudice in this context, any of which standing alone could be dispositive in a particular case.

First, the length of delay between discharge and recall. The longer the jury has been discharged, the greater the likelihood of prejudice. Freed from the crucible of the jury's group decision-making enterprise, discharged jurors may begin to forget key facts, arguments, or instructions from the court. In taking off their juror "hats" and returning to their lives, they may lose sight of the vital collective role they played in the impartial administration of justice. And they are more likely to be exposed to potentially prejudicial sources of information or discuss the case with others, even if they do not realize they have done so or forget when questioned after being recalled by the court. How long is too long is left to the discretion of the district court, but it could be as short as even a few minutes, depending on the case.

Second, whether the jurors have spoken to anyone about the case after discharge. *This could include court staff, attorneys and litigants, press and sketch artists, witnesses, spouses, friends, and so on.* Even apparently innocuous comments about the case from someone like a courtroom deputy such as "job well done" may be sufficient to taint a discharged juror who might then resist reconsidering her decision.

Third, the reaction to the verdict. Trials are society's way of channeling disputes into fair and impartial resolutions. But these disputes

can be bitter and emotional. And, depending on the case, those emotions may be broadcasted to the jury in response to their verdict. Shock, gasps, crying, cheers, and yelling are common reactions to a jury verdict—whether as a verdict is announced in the courtroom or seen in the corridors after discharge.

In such a case, there is a high risk that emotional reactions will cause jurors to begin to reconsider their decision and ask themselves, "Did I make the right call?" Of course, this concern would be present even in a decision to reinstruct the jury to fix an error after the verdict is announced but before they are discharged. See Fed. Rule Civ. Proc. 51(b)(3). Even so, after discharging jurors from their obligations and the passage of time, a judge should be reluctant to re-empanel a jury that has witnessed emotional reactions to its verdict.

In considering these and any other relevant factors, courts should also ask to what extent just-dismissed jurors accessed their smartphones or the internet, which provide other avenues for potential prejudice. It is a now-ingrained instinct to check our phones whenever possible. Immediately after discharge, a juror could text something about the case to a spouse, research an aspect of the evidence on Google, or read reactions to a verdict on Twitter. Prejudice can come through a whisper or a byte.

136 S.Ct. at 1894 (emphasis added).

*c. The trial court did not err in excluding the affidavits of the jurors, the private investigators and the trial attorneys from consideration.*

**{¶40}** In the case at bar, we have little trouble concluding that, assuming arguendo the trial court had the power to recall the jury, it was appropriate not to do so under the facts of this case.

**{¶41}** The first jury in this case was discharged February 29, 2016. Wilson presented only three of the twelve juror's affidavits. The juror affidavits were executed in August – September of 2017, nearly one and one-half years after the jury in the first trial was discharged. The affidavits are identically worded. Wilson's attorney indicated that he only contacted eight of the twelve jurors from Wilson's first jury trial. [*Affidavit of Paul Giorgianni, Appendix 4 to the Petition for Post-Conviction Relief* at ¶2, Docket No. 226]. A second jury was empaneled, heard the evidence, and retuned its verdicts finding Wilson guilty of two of the three charges.

**{¶42}** We find no error in the trial court's decision to order a new trial. We find no error in the trial court's decision to reject consideration of the juror affidavits, counsels' affidavits and the private investigators' affidavits. The petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that appellant set forth sufficient operative facts to establish substantive grounds for relief. *Calhoun*, 86 Ohio St.3d at paragraph two of the syllabus; see R.C. 2953.21(C).

**{¶43}** Accordingly, Wilson's argument that he was entitled to a hearing to determine whether his retrial on Count 3 was barred on Double Jeopardy grounds is overruled in its entirety. [Appellant's Brief at 6 -13].

**2. The spillover effect.**

{¶44} Wilson next contends that if Count 3 was not retried because it was barred by Double Jeopardy, the evidence concerning KP would not have been admissible in the second trial.

{¶45} Wilson's argument that the erroneous retrial on Count 3 prejudiced his defense to Count 1 of the indictment due to the spillover effect is moot in light of our holding that the affidavits were not admissible and the trial court did not err in ordering a new trial. [Appellant's Brief at 13-14].

{¶46} The petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that appellant set forth sufficient operative facts to establish substantive grounds for relief. *Calhoun*, 86 Ohio St.3d at paragraph two of the syllabus; see R.C. 2953.21(C).

### 3. The state did not withhold exculpatory evidence.

{¶47} Wilson next argues that his rights were violated because the state withheld information that EC had no memory of Wilson or the events. [Appellant's Brief at 15-18].

{¶48} In Wilson's direct appeal we noted,

> In assignments of error one and two, appellant claims he was denied due process because the state failed to disclose that E.C. could not remember *him or the incident.* In the alternative, appellant claims he was denied the effective assistance of counsel because his trial attorneys failed to present evidence that E.C. could not remember him or the incident. We disagree.

*Wilson I,* 2017-Ohio-5724, ¶20 (emphasis added). We further noted,

During the competency hearing held on January 4, 2016, appellee informed the trial court it would not be calling E.C., age five at the time, as a witness, stating, "[h]er ability to recall events from during the summer even is very limited, and getting her to sit still for more than about five to ten minutes at a time is rather—rather difficult." January 4, 2016 T. at 3. The indictment filed July 17, 2015 indicated the incident with E.C. occurred between March 31, 2015, through April 7, 2015 when she was four years old. Defense counsel was put on notice in January 2016 that E.C.'s recall ability was limited. This was nine months after the dates in the indictment. If five year old E.C. had limited recall after nine months, it was not a surprise that she could not recall appellant and/or the incident sixteen months (sentencing) or seventeen months (memorandum contra) after the dates listed in the indictment. We do not find appellee withheld evidence.

*Wilson I,* 2017-Ohio-5724, 25.

{¶49} We further note that Wilson was on notice as early as October 1, 2015 that the state was "unsure if she [E.C.] is going to be called at this point." Motion Hearing, Oct. 1, 2015 at 26-27.

{¶50} In *Wilson I* this Court stated,

Appellant argues in the alternative, his trial counsel was ineffective by failing to present evidence of E.C.'s lack of memory to the jury.

\* \* \*

Whether to call a five year old witness to the stand in a sexual abuse case is a strategic choice of counsel. Based on her limited recall ability, her

testimony could have gone either way. As argued by appellee, placing a five year old child on the witness stand to answer questions sexual in nature could have very well alienated the jury. Whether to call a certain witness at trial falls within the realm of trial tactics and generally will not constitute ineffective assistance of counsel. See *State v. Coulter*, 75 Ohio App.3d 219, 598 N.E.2d 1324 (1992). This court must accord deference to defense counsel's strategic choices made during trial and "requires us to eliminate the distorting effect of hindsight." *State v. Post*, 32 Ohio St.3d 380, 388, 513 N.E.2d 754 (1987). See *State v. Clayton*, 62 Ohio St.2d 45, 49, 402 N.E.2d 1189 (1980).

Appellant does not list any potential witnesses that could have been called "to whom E.C. made statements concerning her lack of memory." Defense counsel cannot be expected to call witnesses that do not exist. Appellant also does not suggest what kind of "stipulation" defense counsel should have offered.

Upon review, we do not find any deficiency by defense counsel and therefore no prejudice to appellant.

*Wilson I,* 2017-Ohio-5724, ¶26; 29-31.

**{¶51}** The affidavit of one of Wilson's original trial counsel states that he was not aware until during the second jury trial in June 2016 that E.C. had no memory of Wilson or the events. [*Affidavit of Brad Koffell, Appendix 25 to the Petition for Post-Conviction Relief* at ¶3-¶4; Docket No. 226]. However, as we have discussed, this information was

disclosed during the January 4, 2016 evidentiary hearing. Wilson has presented no evidence that E.C. would have been found competent to testify during his jury trial.

**{¶52}** We find that in assessing the evidence based on the above-mentioned factors, the trial court did not abuse its discretion in assessing the credibility of these affidavits. In *State v. Calhoun,* the Ohio Supreme Court noted,

> [I]n reviewing a petition for post-conviction relief filed pursuant to R.C. 2953.21, a trial court should give due deference to affidavits sworn to under oath and filed in support of the petition, but may, in the sound exercise of discretion, judge their credibility in determining whether to accept the affidavits as true statements of fact. To hold otherwise would require a hearing for every post-conviction relief petition. Because the statute clearly calls for discretion in determining whether to grant a hearing, accepting all supporting affidavits as true is certainly not what the statute intended. "[I]f we would allow any open-ended allegation or conclusory statement concerning competency of counsel without a further showing of prejudice to the defendant to automatically mandate a hearing, division (D) of R.C. 2953.21 would be effectively negated and useless." *Jackson,* 64 Ohio St.2d at 112, 18 O.O.3d at 351, 413 N.E.2d at 823.

86 Ohio St.3d 279, 284, 1999-Ohio-102, 714 N.E.2d 905.

**{¶53}** Accordingly, Wilson's claim that the state withheld exculpatory evidence is barred by res judicata. [Appellant's Brief at 16-18]. Further Wilson's claim that his trial

attorney rendered ineffective assistance by failing to raise or preserve this issue is also barred by res judicata. [Appellant's Brief at 23-24][2].

**{¶54}** Wilson has failed to sustain his burden of demonstrating that an error affected his substantial rights. *United States v. Olano*, 507 U.S. at 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508(1993); *State v. Perry*, 101 Ohio St.3d 118, 120 802 N.E.2d 643, 646(2004). We find no manifest miscarriage of justice occurred in this case. *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240(2002), *quoting State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804(1978), paragraph three of the syllabus.

**{¶55}** The petition, the supporting documentary evidence, the files, and the records do not demonstrate that appellant set forth sufficient operative facts to establish substantive grounds for relief. *Calhoun*, 86 Ohio St.3d at paragraph two of the syllabus; see R.C. 2953.21(C).

### 4. Ineffective assistance of counsel.

**{¶56}** Wilson presents multiple arguments contending that his trial counsels rendered ineffective assistance.

**{¶57}** In order for a petitioner to be entitled to an evidentiary hearing in a post-conviction relief proceeding on a claim that he was denied effective assistance of counsel, the two-part *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 838, 122 L.Ed.2d (1984) test is to be applied. *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180(1993); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373(1989).

**{¶58}** The petitioner must therefore prove that: 1). counsel's performance fell below an objective standard of reasonable representation; and 2). there exists a

---

[2] We note Wilson also raised this issue in his App.R. 26(B) motion to re-open his direct appeal.

reasonable probability that, were it not for counsel's errors, the petitioner would have been found not guilty. *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203(1985).

**{¶59}** Furthermore, before a hearing is granted in proceedings for post-conviction relief upon a claim of ineffective assistance of trial counsel, the petitioner bears the initial burden to submit evidentiary material containing sufficient operative facts that demonstrate a substantial violation of any of defense counsel's essential duties to his client and prejudice arising from counsel's ineffectiveness. *Calhoun,* 86 Ohio St.3d at 289, 714 N.E.2d 905; *State v. Jackson*, 64 Ohio St.2d 107, 413 N.E.2d 819(1980), syllabus; see, also *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674, 693(1984).

**{¶60}** Regarding claims of ineffective assistance of trial counsel in post-conviction proceedings, the Ohio Supreme Court has stated that where a defendant, represented by different counsel on direct appeal, "fails to raise [in the direct appeal] the issue of competent trial counsel and said issue could fairly have been determined without resort to evidence dehors the record, res judicata is a proper basis for dismissing defendant's petition for post-conviction relief." *State v. Cole*, 2 Ohio St.3d 112, 443 N.E.2d 169(1982), syllabus; *see, also, State v. Lentz*, 70 Ohio St.3d 527, 530, 1994–Ohio–532, 639 N.E.2d 784. A trial court may dismiss a petition seeking post-conviction relief if it determines that the doctrine of res judicata applies. *State v. Szefcyk*, 77 Ohio St.3d 93, 1996–Ohio–337, 671 N.E.2d 233. Accord, *State v. Church*, 5th Dist. Stark No. 2017CA00216, 2018-Ohio-368, ¶ 43, *appeal not allowed*, 152 Ohio St.3d 1483, 2018-Ohio-1990, 98 N.E.3d 296, ¶ 43 (2018).

{¶61} Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment.  *State v. Szefcyk*, 77 Ohio St.3d 93, *syllabus, approving and following State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104(1967), paragraph nine of the syllabus.

### a. Failing to object to hearsay statements made by EC and KP.

{¶62} Wilson contends that his trial attorneys were ineffective because they did not object to hearsay statements made by E.C. and K.P. to their parents.  [Appellant's Brief at 20].

{¶63} Initially we note that evidence offered de hors the record must be more than evidence which was in existence and available to the appellant at the time of the trial and which could and should have been submitted at trial if the appellant wished to make use of it.  Simply put, the purpose of post-conviction proceedings is not to afford one convicted of a crime a chance to retry his case.

{¶64} "Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding [,] except an appeal from that judgment, any defense or any claimed lack of due process that was *raised or could have been raised* by the defendant at the trial [that] resulted in that judgment of conviction or on an appeal from that judgment."  (Emphasis sic.)  *State v. Perry*, 10 Ohio St.2d 175, 39 O.O.2d 189, 226 N.E.2d 104(1967), paragraph nine of the syllabus.  Thus, a common pleas court may apply the doctrine of res judicata

to dismiss a post-conviction claim, when the claim presents a matter that could fairly have been determined without resort to evidence dehors the record. Id.; *State v. Cole*, 2 Ohio St.3d 112, 114, 2 OBR 661, 443 N.E.2d 169(1982).

**{¶65}** In the case at bar, Wilson presents no evidence outside the record to support his claim. Accordingly, the claim presents a matter that could fairly have been determined without resort to evidence dehors the record.

**{¶66}** As Wilson was able to raise and fully litigate this issue on direct appeal, this Court concludes Wilson has failed to sustain his burden of demonstrating that an error affected his substantial rights. *United States v. Olano*, 507 U.S. at 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508(1993); *State v. Perry*, 101 Ohio St.3d 118, 120 802 N.E.2d 643, 646(2004). We find no manifest miscarriage of justice occurred in this case. *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002), *quoting State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804(1978), paragraph three of the syllabus.

**{¶67}** The petition, the documentary evidence, the files, and the records do not demonstrate that appellant set forth sufficient operative facts to establish substantive grounds for relief. *Calhoun*, 86 Ohio St.3d at paragraph two of the syllabus; see R.C. 2953.21(C).

### b. Statements made to the forensic interviewer.

**{¶68}** Wilson next contends that his trial counsel rendered ineffective assistance by failing to object to the children's statements to the forensic interviewer. [Appellant's Brief at 20-21].

**{¶69}** In *Wilson I* this Court noted,

In his May 27, 2016 motion in limine to exclude videotape evidence of E.C., appellant sought to exclude E.C.'s forensic interview with the Children's Advocacy Center within Nationwide Children's Hospital. Appellant argued the interviewers "were acting as if they were part of the police department, yet holding on to the veneer of being physician's assistants in order to get the video testimony of the alleged victim admitted into evidence under Evid.R. 803(4)." Prior to jury selection, the trial court entertained argument on the motion. Appellee presented redacted copies of the videotaped interviews of both E.C. and K.P., editing out possible statements not covered under a hearsay exception. T. at 43–44. The trial court denied appellant's motion in limine without comment. T. at 56. *The next day, the parties agreed both videotaped interviews could be played in their entirety in exchange for appellant being able to play portions of his own videotaped interview.* T. at 688–690.

*Wilson I,* 2017-Ohio-5724, ¶37 (emphasis added). In reviewing this claim under the plain-error doctrine, we held,

Upon review, we find the statements made by E.C. to Ms. Combs and by K.P. to Ms. Wilkinson *were for the purposes of medical diagnosis or treatment, and the trial court did not err in admitting the videotapes under Evid.R. 803(4).* We find the playing of E.C.'s videotape did not violate appellant's rights under the Confrontation Clause.

*Wilson I,* 2017-Ohio-5724, ¶41 (emphasis added).

{¶70} In the case at bar, Wilson presents no evidence outside the record to support his claim. Accordingly, the claim presents a matter that could fairly have been determined without resort to evidence dehors the record.

{¶71} As Wilson was able to raise and fully litigate this issue on direct appeal, this Court concludes Wilson has failed to sustain his burden of demonstrating that an error affected his substantial rights. *United States v. Olano*, 507 U.S. at 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508(1993); *State v. Perry*, 101 Ohio St.3d 118, 120 802 N.E.2d 643, 646(2004). We find no manifest miscarriage of justice occurred in this case. *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240(2002), *quoting State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804(1978), paragraph three of the syllabus.

{¶72} The petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that appellant set forth sufficient operative facts to establish substantive grounds for relief. *Calhoun*, 86 Ohio St.3d at paragraph two of the syllabus; see R.C. 2953.21(C).

### c. Failure to impeach.

{¶73} Wilson next argues that trial counsel was ineffective because he did not impeach K.P. with contradictory statements she made regarding the number of times she was inappropriately touched. [Appellant's Brief at 21-22].

{¶74} In the case at bar, Wilson presents no evidence outside the record to support his claim. Accordingly, the claim presents a matter that could fairly have been determined without resort to evidence dehors the record.

{¶75} As Wilson was able to raise and fully litigate this issue on direct appeal, this Court concludes Wilson has failed to sustain his burden of demonstrating that an error

affected his substantial rights. *United States v. Olano*, 507 U.S. at 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508(1993); *State v. Perry*, 101 Ohio St.3d 118, 120 802 N.E.2d 643, 646(2004). We find no manifest miscarriage of justice occurred in this case. *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240(2002), *quoting State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804(1978), paragraph three of the syllabus.

**{¶76}** The petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that appellant set forth sufficient operative facts to establish substantive grounds for relief. *Calhoun*, 86 Ohio St.3d at paragraph two of the syllabus; see R.C. 2953.21(C).

### d. Failure to call witnesses.

**{¶77}** Wilson next argues that trial counsel was ineffective in failing to call Michael Price as a witness. Wilson asserts that Price would testify that K.P.'s parents were habitually late in picking her up from chess class. Wilson contends that this would have contradicted the state's theory that he isolated K.P. in order to have sexual contact with her. [Appellant's Brief at 22]. Wilson submitted the un-signed, un-executed "affidavit" of Price and his own affidavit in support of his petition. [*Affidavit of Michael Price, Appendix 12 to the Petition for Post-Conviction Relief*, Docket No. 226; [*Affidavit of F. Leon Wilson, Appendix 14 to the Petition for Post-Conviction Relief,* Docket No. 226].

**{¶78}** As self-serving testimony, the trial court could give little or no weight to Wilson's affidavit. See*, State v. Calhoun*, 86 Ohio St.3d 279, 281, 714 N.E.2d 905 (1999);*State v. Kapper*, 5 Ohio St.3d 36, 38, 448 N.E.2d 823 (1983) (letter or affidavit from the court, prosecutors, or defense counsel alleging a defect in the plea process might be sufficient to warrant a hearing, although defendant's own affidavit alleging same defect

would not, because the former are not self-serving declarations);*State v. Elmore,* 5th Dist. No. 2005-CA-32, 2005-Ohio-5740, ¶109.

**{¶79}** Wilson himself testified that K.P.'s father had been late in picking her up "a couple times...." 9T. Jury trial June 10, 2016 at 1398. He further testified, "At no time was I ever alone with [K.P.], period." 9T. Jury trial June 10, 2016 at 1419. However, Wilson also indicated that he did spend "extra time" with K.P. after class,

> So to be very specific about the question, the rapid development is because she would work harder to be better *and that's why she did stay* and do the extra problems because she wanted to make sure that nobody knew as much as she did.
>
> Now, as a coach, that's perfect and that's why we had that relationship that was so good, because I spent the extra time. And I don't want to make it seem like, you know, at 5:00, 5:30 I didn't really have anything else to do on a Thursday, I live five minutes away, and it wasn't that type of thing where I had to get out and I didn't want to, because this is developing my program. This is proving that what I'm doing is successful. *So I didn't mind spending the extra couple minutes*, and she loved it. She just absorbed it, shew [sic] and that was it. So that's why she developed so quickly, in my opinion.

9T. Jury Trial June 10, 2016 at 1472-1473 (emphasis added). Wilson also testified,

> I had no way of knowing what time any of the parents picked up, particularly Stacey and -- Stacey and Jamie, because the way that it worked, Ms. Kat would bring the kids up and the 4:30 -- 3:45 to 4:30 group,

she would pick up the 4:30 group and she's also delivering the -- excuse me, she picked up the 3:45 group and she'd be delivering the 4:30 group. So that early group would leave and they would go back to their respective preschool, Pre-K classes. I would never see them again.

And then at 5:30 she would come and pick the 5:30 kids up and I would never see them again. So I don't know whose parents, who was picking up who when.

I was not privy to that because at that particular point in time I'm packing up to get out of there. There were never any children, never any children in the classroom with me alone because I'm packing up, I'm thinking about getting to Hilliard, I'm readjusting my thinking for my next group of kids that were a little bit more advanced.

So I have no way of knowing who picked up who. Sometimes coming down the steps checking out I'll see parents with kids and would wave but, other than that, I would have no way – no knowledge of that.

9T. Jury Trial June 10, 2016 at 1473-1474.

{¶80} Whether to call a certain witness at trial falls within the realm of trial tactics and generally will not constitute ineffective assistance of counsel. *See State v. Coulter*, 75 Ohio App.3d 219, 598 N.E.2d 1324 (1992). This court must accord deference to defense counsel's strategic choices made during trial and "requires us to eliminate the distorting effect of hindsight." *State v. Post*, 32 Ohio St.3d 380, 388, 513 N.E.2d 754 (1987). *See State v. Clayton,* 62 Ohio St.2d 45, 49, 402 N.E.2d 1189 (1980).

**{¶81}** It is highly speculative that Price's testimony would have made any difference in the outcome of the case.

**{¶82}** This Court concludes Wilson has failed to sustain his burden of demonstrating that an error affected his substantial rights. *United States v. Olano*, 507 U.S. at 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508(1993); *State v. Perry*, 101 Ohio St.3d 118, 120 802 N.E.2d 643, 646(2004). We find no manifest miscarriage of justice occurred in this case. *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240(2002), *quoting State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804(1978), paragraph three of the syllabus.

**{¶83}** The petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that appellant set forth sufficient operative facts to establish substantive grounds for relief. *Calhoun*, 86 Ohio St.3d at paragraph two of the syllabus; see R.C. 2953.21(C).

### e. Trial court's expression of appreciation.

**{¶84}** Wilson next argues that his trial attorney's failure to object to KP's "witness-stand valediction and the judge's expression of appreciation to KP. The trial record discloses that after KP was excused from the witness stand, she thanked Price for 'helping my mom' and 'paying for my therapist's appointments.' The trial judge told her, '[t]hank you for saying that.' (Tr. 1294) The judge's findings of fact do not address this omission by counsel. A hearing is needed to determine whether defense counsel's failure to object was objectively reasonable." [Appellant's Brief at 22].

**{¶85}** In the case at bar, Wilson presents no evidence outside the record to support his claim. Accordingly, the claim presents a matter that could fairly have been

determined without resort to evidence dehors the record. Accordingly, this claim is barred by res judicata.

{¶86} As Wilson was able to raise and fully litigate this issue on direct appeal, this Court concludes that Wilson has failed to sustain his burden of demonstrating that an error affected his substantial rights. *United States v. Olano*, 507 U.S. at 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508(1993); *State v. Perry*, 101 Ohio St.3d 118, 120 802 N.E.2d 643, 646(2004). We find no manifest miscarriage of justice occurred in this case. *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240(2002), *quoting State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804(1978), paragraph three of the syllabus.

{¶87} The petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that appellant set forth sufficient operative facts to establish substantive grounds for relief. *Calhoun*, 86 Ohio St.3d at paragraph two of the syllabus; see R.C. 2953.21(C).

### *f. Failure to call a DNA expert.*

{¶88} Wilson next asserted that defense counsel rendered deficient performance by failing to present a DNA expert.

{¶89} A decision regarding which defense to pursue at trial is a matter of trial strategy "within the exclusive province of defense counsel to make after consultation with his client." *State v. Murphy*, 91 Ohio St.3d 516, 524, 2001–Ohio–0112. This court can only find that counsel's performance regarding matters of trial strategy is deficient if counsel's strategy was so "outside the realm of legitimate trial strategy so as 'to make ordinary counsel scoff." *State v. Woullard,* 158 Ohio App.3d 31, 813 N.E .2d 964, 2004–Ohio–3395, ¶ 39(2nd Dist.), *quoting State v. Yarber*, 102 Ohio App.3d 185, 188, 656

N.E.2d 1322(12th Dist.1995). Further, the Ohio Supreme Court has recognized that if counsel, for strategic reasons, decides not to pursue every possible trial strategy, defendant is not denied effective assistance of counsel. *State v. Brown*, 38 Ohio St.3d 305, 319, 528 N.E.2d 523(1988). When there is no demonstration that counsel failed to research the facts or the law or that counsel was ignorant of a crucial defense, a reviewing court defers to counsel's judgment in the matter. *State v. Clayton*, 62 Ohio St.2d 45, 49, 402 N.E.2d 1189(1980), *citing People v. Miller*, 7 Cal.3d 562, 573–574, 102 Cal.Rptr. 841, 498 P.2d 1089(1972); *State v. Wiley*, 10th Dist. No. 03AP–340, 2004–Ohio–1008, ¶ 21.

**{¶90}** "As an initial matter, the failure to call an expert and instead rely on cross-examination does not constitute ineffective assistance of counsel. *State v. Thompson* (1987), 33 Ohio St.3d 1, 10-11, 514 N.E.2d 407, 417." *State v. Nicholas,* 66 Ohio St.3d 431, 436, 613 N.E.2d 225(1993).

**{¶91}** Debatable trial tactics do not establish ineffective assistance of counsel*." State v. Hoffner,* 102 Ohio St.3d 358, 365, 2004–Ohio–3430(2004), ¶ 45. Trial counsel's failure to request an expert is a "debatable trial tactic," and does not amount to ineffective assistance of counsel. *See State v. Thompson* (1987), 33 Ohio St.3d 1, 9, 514 N.E.2d 407 (trial counsel's failure to obtain a forensic pathologist to "rebut" issue of rape was not ineffective assistance of counsel); *State v. Foust*, 105 Ohio St.3d 137, 153–154, 2004–Ohio–7006, 823 N.E.2d 836, ¶¶ 97–99 (trial counsel's failure to request funds for a DNA expert, an alcohol and substance-abuse expert, a fingerprint expert, and an arson expert did not amount to ineffective assistance of counsel because appellant's need for experts was "highly speculative" and counsel's choice "to rely on cross-examination" of prosecution's expert was a "legitimate tactical decision"); *State v. Yarger*, 6th Dist. No.

H–97–014, 1998 WL 230648 (May 1, 1998) (trial counsel's failure to hire an expert medical doctor to rebut state's expert witness was not ineffective assistance of trial counsel); *State v. Rutter*, 4th Dist. No. 02CA17, 2003–Ohio–373, ¶ 19, 28 (trial counsel's failure to hire an accident reconstructionist did not amount to ineffective assistance of counsel).

**{¶92}** Assuming that the advocacy of counsel was somehow deficient, such deficiency constitutes reversible error only where it prejudices the rights of the criminal defendant. No such showing has been made in this case. *Nicholas,* 66 Ohio St.3d at 436.

**{¶93}** The affidavit of Wilson's expert is highly speculative as to whether any DNA could be recovered from the jumpers. The clothing was not immediately collected, having been placed in a laundry hamper and intermingled with other clothing. 4T. Jury trial June 10, 2016 at 641-642). Of the five articles tested, Wilson was excluded as a contributor. (Three pairs of underwear and two pairs of leggings). This evidence was presented to the jury. 4T. Jury trial June 10, 2016 at 625; 626; 627; 638-639; 644-645.

**{¶94}** In the instant cause, Wilson's counsels were not ineffective so as to have precluded a fair trial or to have created an unreliable result. Wilson was represented by two experienced trial attorneys who presumably were aware of the issues involving the evidence of gross sexual imposition. Wilson's retained trial counsels decided not to hire or to request the appointment of a DNA expert, choosing instead to rely on their cross-examination of the state's expert in order to rebut the evidence of gross sexual imposition. In light of these circumstances, the errors alleged by Wilson were neither so serious that his counsels were not functioning as the "counsel" guaranteed by the Sixth Amendment,

nor so serious that the result of his trial was rendered unreliable. *See, State v. Thompson,* 33 Ohio St.3d 1, 10-11, 514 N.E.2d 407(1987).

{¶95} Accordingly, we will not second-guess the judgment of Wilson's counsels. Wilson has failed to sustain his burden of demonstrating that an error affected his substantial rights. *United States v. Olano,* 507 U.S. at 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508(1993); *State v. Perry,* 101 Ohio St.3d 118, 120 802 N.E.2d 643, 646(2004). We find no manifest miscarriage of justice occurred in this case. *State v. Barnes,* 94 Ohio St.3d 21, 27, 759 N.E.2d 1240(2002), *quoting State v. Long,* 53 Ohio St.2d 91, 372 N.E.2d 804(1978), paragraph three of the syllabus.

{¶96} The petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that appellant set forth sufficient operative facts to establish substantive grounds for relief. *Calhoun,* 86 Ohio St.3d at paragraph two of the syllabus; see R.C. 2953.21(C).

*g. Failure to show animosity of KP toward Wilson.*

{¶97} Wilson asserts that defense counsel rendered deficient performance by failing to argue to the jury that KP had a grudge against Wilson for naming another girl as captain of the chess team and letting her take home a tournament trophy.

{¶98} In the case at bar, Wilson presents no evidence outside the record other than his own affidavit to support his claim. As self-serving testimony, the trial court could give little or no weight to Wilson's affidavit. *See, State v. Calhoun,* 86 Ohio St.3d 279, 281, 714 N.E.2d 905 (1999);*State v. Kapper,* 5 Ohio St.3d 36, 38, 448 N.E.2d 823 (1983) (letter or affidavit from the court, prosecutors, or defense counsel alleging a defect in the plea process might be sufficient to warrant a hearing, although defendant's own affidavit

alleging same defect would not, because the former are not self-serving declarations);*State v. Elmore,* 5th Dist. No. 2005-CA-32, 2005-Ohio-5740, ¶109.

**{¶99}** In any event, Wilson has failed to demonstrate that had the evidence been presented, the result of his trial would have been different. *See, State v. Conway,* 109 Ohio St.3d 412, 2006-Ohio-2815, 848N.E.2d 810, ¶108.

**{¶100}** This Court concludes that Wilson has failed to sustain his burden of demonstrating that an error affected his substantial rights. *United States v. Olano*, 507 U.S. at 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508(1993); *State v. Perry*, 101 Ohio St.3d 118, 120 802 N.E.2d 643, 646(2004). We find no manifest miscarriage of justice occurred in this case. *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240(2002), *quoting State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804(1978), paragraph three of the syllabus.

**{¶101}** The petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that appellant set forth sufficient operative facts to establish substantive grounds for relief. *Calhoun*, 86 Ohio St.3d at paragraph two of the syllabus; see R.C. 2953.21(C).

*h. Cumulative effect.*

**{¶102}** Wilson next argues that the cumulative effect of counsels' numerous errors warrants a hearing on his PCR petition. [Appellant's Brief at 25-26].

**{¶103}** In *State v. Brown*, 100 Ohio St.3d 51, 2003–Ohio–5059, 796 N.E.2d 506, the Ohio Supreme Court recognized the doctrine of cumulative error. However, as explained in *State v. Bethel*, 110 Ohio St.3d 416, 2006–Ohio–4853, 854 N.E.2d 150, ¶197, it is simply not enough to intone the phrase "cumulative error." *State v. Sapp*, 105 Ohio St.3d 104, 2004–Ohio–7008, 822 N.E.2d 1239, ¶103.

{¶104} Where we have found that the trial court did not err, cumulative error is simply inapplicable. *State v. Carter*, 5th Dist. Stark No.2002CA00125, 2003–Ohio-1313 at ¶37. In the case at bar, to the extent that we have found that any claimed error of the trial court was harmless, or that claimed error did not rise to the level of plain error, we conclude that the cumulative effect of such claimed errors is also harmless because taken together, they did not materially affect the verdict. *State v. Leonard*, 104 Ohio St.3d 54, 89–90, 2004–Ohio–6235, 818 N.E.2d 229, 270 at ¶ 185.

{¶105} As this case does not involve multiple instances of error, this Court concludes that Wilson has failed to sustain his burden of demonstrating that an error affected his substantial rights. *United States v. Olano*, 507 U.S. at 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508(1993); *State v. Perry*, 101 Ohio St.3d 118, 120 802 N.E.2d 643, 646(2004). We find no manifest miscarriage of justice occurred in this case. *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240(2002), *quoting State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804(1978), paragraph three of the syllabus.

{¶106} The petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that appellant set forth sufficient operative facts to establish substantive grounds for relief. *Calhoun*, 86 Ohio St.3d at paragraph two of the syllabus; see R.C. 2953.21(C).

{¶107} Based on the foregoing, Wilson's First Assignment of Error is overruled in its entirety.

B. Whether the trial court abused its discretion in denying Wilson's petition for post-conviction relief. [Appellant's Second Assignment of Error].

{¶108} In his second assignment of error, Wilson contends that the attorney that filed his PCR petition rendered ineffective assistance of counsel in areas in addition to those set forth in his First Assignment of Error.  [Appellant's Brief at 26].

*1.  Trial Counsel's Failure to Challenge the Identical Wording of Counts 1 and 2 of the Indictment on Federal and State Constitutional Grounds is barred by res judicata.*

{¶109} Wilson argues that his indictment was defective because the counts are framed in identical terms.  [Appellant's Brief at 27].

{¶110} To the extent that appellant argues the indictment was defective, he waived that argument by failing to raise it before trial.  See Crim. R. 12(C)(2); *State v. Schultz*, 96 Ohio St. 114, 117 N.E. 30(1917); *State v. Blalock,* 8th Dist. Cuyahoga  Nos. 80419 and 80420, 2002-Ohio-4580; *State v.* Kenney (May 10, 2000), 5th Dist. Holmes No. CA93-480A, 2000 WL 699673; *State v. Avery*, 126 Ohio App.3d 36, 709 N.E.2d 875 (3rd Dist. 1998); *State v. Biros*, 78 Ohio St.3d 426, 436, 678 N.E. 2d 891, 901-902(1997), *citing State v. Joseph*, 73 Ohio St. 3d 450, 455, 653 N.E. 2d 285, 290-291(1995); and *State v. Mills*, 62 Ohio St. 3d 357, 363, 582 N.E.2d  972, 980(1992) (Under Crim. R. 12(B) and 12(G), alleged defects in an indictment must be asserted before trial or they are waived"); *see, also, State v. Williams*, 51 Ohio St. 2d 112, 117, 98, 101, 364 N.E. 2d 1364(1977), 1367-1368, *death penalty vacated*, 438 U.S. 911, 98 S.Ct. 3137, 57 L.Ed. 2d 1156 (1977).

{¶111} In addition, in the case at bar, in response to two questions, the jury was instructed that Count One of the Indictment concerned touching the vagina of E.C. and Count Two of the Indictment concerned touching the buttocks of E.C. 10T., Jury trial June 10, 2016 at 1617-1625.  Wilsons two retained trial attorneys did not object to this instruction.  Id. In addition, the jury acquitted Wilson of Count 2 of the Indictment.  Wilson

has failed to sustain his burden of demonstrating that the error affected his substantial rights.

**{¶112}** In the case at bar, Wilson presents no evidence outside the record to support his claim.  Accordingly, the claim presents a matter that could fairly have been determined without resort to evidence dehors the record.  Accordingly, this claim is barred by res judicata.

**{¶113}** As Wilson was able to raise and fully litigate this issue on direct appeal, this Court concludes that Wilson has failed to sustain his burden of demonstrating that an error affected his substantial rights.  *United States v. Olano*, 507 U.S. at 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508(1993); *State v. Perry*, 101 Ohio St.3d 118, 120 802 N.E.2d 643, 646(2004).  We find no manifest miscarriage of justice occurred in this case.  *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240(2002), *quoting State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804(1978), paragraph three of the syllabus.

**{¶114}** The petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that appellant set forth sufficient operative facts to establish substantive grounds for relief.  *Calhoun*, 86 Ohio St.3d at paragraph two of the syllabus; see R.C. 2953.21(C).

*2. Trial Counsel's Failure to Request that the First Jury be Informed of Its Authority to Return a Partial Verdict, Failure to Request a Poll of the First Jury, Failure to Request the Trial Judge to Reconvene the First Jury and Conduct an Inquiry as to a Verdict on Count 3, and Failure to File a Motion to Dismiss Count 3 on Double Jeopardy Grounds Do Not Present a Substantial Ineffective Assistance Claim That Should Have Been Included in Wilson's Petition for Post-Conviction Relief.*

{¶115} As we discussed in our disposition of Wilson's First Assignment of Error, the affidavits of the jurors, trial counsels and the private investigators are not admissible to impeach the first jury's verdict. Therefore, any failure by counsel to assert claims based upon the affidavits have not prejudiced Wilson. [Appellant's Brief at 29].

{¶116} Wilson has failed to sustain his burden of demonstrating that an error affected his substantial rights. *United States v. Olano*, 507 U.S. at 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508(1993); *State v. Perry*, 101 Ohio St.3d 118, 120 802 N.E.2d 643, 646(2004). We find no manifest miscarriage of justice occurred in this case. *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240(2002), *quoting State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804(1978), paragraph three of the syllabus.

{¶117} The petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that appellant set forth sufficient operative facts to establish substantive grounds for relief. *Calhoun*, 86 Ohio St.3d at paragraph two of the syllabus; see R.C. 2953.21(C).

*3. The Omission of the Cited Instances of Trial Counsel's Ineffective Assistance from the Petition did not prejudice Wilson and therefore he has failed to demonstrate that an error affected his substantial rights.*

{¶118} Wilson finally argues, "Wilson's post-conviction attorney raised eight instances of deficient performance by trial counsel. The two omitted instances described above are especially compelling and stronger than some of those that were raised in the petition. This omission on the part of post-conviction counsel amounted to deficient performance." [Appellant's Brief at 29-30].

**{¶119}** Any failure by counsel to assert claims based upon the affidavits has not prejudiced Wilson.  [Appellant's Brief at 29].

**{¶120}** To the extent that appellant argues the indictment was defective, he waived that argument by failing to raise it before trial.  See Crim. R. 12(C)(2); *State v. Schultz*, 96 Ohio St. 114, 117 N.E. 30(1917); *State v. Blalock,* 8th Dist. Cuyahoga  Nos. 80419 and 80420, 2002-Ohio-4580; *State v.* Kenney (May 10, 2000), 5th Dist. Holmes No. CA93-480A, 2000 WL 699673; *State v. Avery*, 126 Ohio App.3d 36, 709 N.E.2d 875 (3rd Dist. 1998); *State v. Biros*, 78 Ohio St.3d 426, 436, 678 N.E. 2d 891, 901-902(1997), *citing State v. Joseph*, 73 Ohio St. 3d 450, 455, 653 N.E. 2d 285, 290-291(1995); and *State v. Mills*, 62 Ohio St. 3d 357, 363, 582 N.E.2d  972, 980(1992) (Under Crim. R. 12(B) and 12(G), alleged defects in an indictment must be asserted before trial or they are waived"); *see, also, State v. Williams*, 51 Ohio St. 2d 112, 117, 98, 101, 364 N.E. 2d 1364(1977), 1367-1368, *death penalty vacated*, 438 U.S. 911, 98 S.Ct. 3137, 57 L.Ed. 2d 1156 (1977).

**{¶121}** In addition, in the case at bar, in response to two questions, the jury was instructed that Count One of the Indictment concerned touching the vagina of E.C. and Count Two of the Indictment concerned touching the buttocks of E.C. 10T., Jury trial June 10, 2016 at 1617-1625.  Wilsons two retained trial attorneys did not object to this instruction.  Id. The jury acquitted Wilson of Count 2 of the Indictment.

**{¶122}** Accordingly, res judicata bars consideration of claims based upon a defect in the indictment.

**{¶123}** Wilson has failed to demonstrate a substantial violation of any counsel's essential duties with respect to the filing of the petition for PCR and has failed to

demonstrate prejudice arising from counsel's alleged ineffectiveness in the filing of the PCR petition.

{¶124} Accordingly, this Court finds that Wilson has failed to sustain his burden of demonstrating that an error affected his substantial rights.  *United States v. Olano*, 507 U.S. at 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508(1993); *State v. Perry*, 101 Ohio St.3d 118, 120 802 N.E.2d 643, 646(2004).  We find no manifest miscarriage of justice occurred in this case.  *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240(2002), *quoting State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804(1978), paragraph three of the syllabus.

{¶125} The petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that appellant set forth sufficient operative facts to establish substantive grounds for relief.  *Calhoun*, 86 Ohio St.3d at paragraph two of the syllabus; see R.C. 2953.21(C).

{¶126} Wilson's Second Assignment of Error is overruled in its entirety.

{¶127} The judgment of the Delaware County Court of Common Pleas is affirmed.


By Gwin, P.J.,

Delaney, J., and

Baldwin, J., concur